IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ST. PAUL SURPLUS LINES | § | |
| INSURANCE COMPANY | § | |
| | § | |
| Plaintiff, | § | C.A. No._____ |
| V. | § | |
| | § | |
| COX OPERATING, LLC. | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF ST. PAUL SURPLUS LINES
## INSURANCE COMPANY'S ORIGINAL COMPLAINT
## FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, St. Paul Surplus Lines Insurance Company (hereinafter "St. Paul"),

pursuant to The Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*, and files this its *Original*

*Complaint for Declaratory Judgment* against Defendant, Cox Operating, LLC ("Defendant").  In

support thereof St. Paul would respectfully show the Court as follows:

### I.

### PARTIES

1.     St. Paul is a capital stock company incorporated in Delaware and having its principal place

of business in St. Paul, Minnesota.

2.      Defendant is a limited liability company incorporated in Louisiana and having its principal

office and place of business at 4514 Cole Avenue, Suite 1175, Dallas, Texas.

50065

## II.

### SERVICE

3.    Defendant may be served with process by serving its registered agent for service, CT Corporation System, 8550 United Plaza Boulevard, Baton Rouge, Louisiana 70809.

## III.

### JURISDICTION

4.    Jurisdiction is proper pursuant to 28 U.S.C. §1332 in that the amount in controversy at issue exceeds $75,000.00 and the parties are diverse-  Plaintiff is incorporated in Delaware and maintains its principal place of business in St. Paul, Minnesota while Defendant is a limited liability company incorporated in Louisiana and having its principal office and place of business in Texas.

5.    Plaintiff brings this action under Rule 57 of the Federal Rules of Civil Procedure and pursuant to The Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*

## IV.

### VENUE

6.    Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because the insurance policy at issue  (*i.e.*, the contract) was negotiated out of and placed in Houston, the policy was delivered in Houston, Defendant's insurance broker is located in Houston, and the policy premiums were paid in Houston.

## V.

## FACTS

**A.    ST. PAUL'S POLICIES**

7.      St. Paul provides Oil and Gas Primary and Umbrella Excess Liability Protection coverage

to Defendant pursuant to Policy Numbers **MU5535386** (the "Primary Policy") and

**MU05573763** (the "Excess Policy"), respectively, with effective dates of June 1, 2005

through June 1, 2006.   The Primary Policy contains $1,000,000 per occurrence and

$2,000,000 aggregate limits and the Excess Policy has aggregate limits of $20,000,000 and

carries a $10,000 deductible.   True and correct copies of the Primary and Excess Policies

are attached hereto at Exhibits A and B.

8.      Defendant has made a claim under the Primary and Excess Policies for costs and expenses

related to alleged post-Hurricane Katrina damages. St. Paul has paid the primary limits of

$1,000,000 and has made a $374,608.43 payment under the Excess Policy.  St. Paul has also

issued a reservation of rights, dated May 21, 2007, with respect to Defendant's claim under

the Excess Policy.

9.      St. Paul relies on the entire contents of the Excess Policy in determining whether coverage

exists for Defendant's claims.  However, St. Paul directs the Court to the following specific

policy language.   St. Paul's Excess Policy coverage provides typical general liability

coverage for *third party* bodily injuries and property damage as follows:

**Bodily injury and property damage liability.**
We'll pay amounts any protected person is legally required to pay as damages for
covered bodily injury or property damage that:
- happens while this agreement is in effect; and
- is caused by an event.

***

*Property damage* means:

- physical damage to tangible property of others, including all resulting loss of use of that property; or
- loss of use of tangible property of others that isn't physically damaged.

10.  Defendant does not assert a claim for third party bodily injury and property damage under the policy.  Instead, Defendant seeks coverage under the limited "Pollution Clean-up Ccost Liability" section of the policy.

11.  The policy provides limited coverage for certain pollution costs incurred by Defendant, in pertinent part providing as follows:

**Pollution clean-up costs liability.**  We'll pay amounts any protected person is legally required to pay for pollution clean-up costs that:

- are covered by this agreement; and
- would have been covered by your St. Paul Travelers Oil And Gas Commercial General Liability Basic Insurance, but aren't only because its applicable limit of coverage is used up.

*Pollution clean-up* costs means any cost or expense that:

- is pollution work; and
- is reported to us within one year of the ending date of that pollution work.

*Pollution work* means:

- the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing of any pollutant.
- the responding to, or assessing, in any way the effects of any pollutant.

*Pollutant* means any solid, liquid, gaseous, or thermal irritant or contaminant, including:

50065

4

- smoke, vapors, soot, fumes;
- acids, alkalis, chemicals; and
- waste.

*Waste* includes materials to be recycled, reconditioned, or reclaimed.

But we won't consider waste to include:

- substances produced from any well that result from your oil or gas operations while such substances are located at, on, or in;
- substances injected into any well to produce oil or gas in your oil or gas operations while such substances are located at, on, or in; or
- glycol that was, or other machinery or equipment operating fluids that were, used in your oil or gas operations, while such substances are, handled or stored at, on, or in;

at any premises, site, or location used for your oil or gas operations, but only while such operations are being performed there.

*Machinery or equipment operating fluids* means those fuels, lubricants, or other fluids that:

- were part of the machinery or equipment being maintained, operated, or used in connection with work being performed by or for you; and
- were needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of machinery or equipment or any of its parts.

at any premises, site, or location used for your oil or gas operations, but only while such operations are being performed there.

*Machinery or equipment* includes mobile equipment, but doesn't include any auto.

\* \* \*

**Pollution clean-up costs for underground pollutants**. We won't cover pollution clean-up costs for the part of pollution work for:

- the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing of any pollutant; or
- the responding to, or assessing, in any way the effects of any pollutant;

if such pollutant is below the surface of the ground or water bottom, or was below the surface of the ground or water bottom at the time pollution work on or for it began.

\* \* \*

**Pollution work loss, costs, or expense.** We won't cover any loss, costs, or expense that results from:

- any request, demand, order, or statutory or regulatory requirement that any protected person or others perform pollution work; or
- any claim or suit by or for any governmental authority for damages that result from the performance of pollution work.

But we won't apply this exclusion to pollution clean-up costs covered under the Pollution clean-up costs liability section of this agreement.

Nor will we apply this exclusion to any damages for property damage for which the protected person would have liability without such:

- request, demand, order, or statutory or regulatory requirement; or
- claim or suit.

12.   St. Paul has paid all amounts to Defendants which St. Paul believes are covered by the Pollution Clean-Up provisions of the policy.

13.   St. Paul does not provide Defendant with first party property damage coverage and the policy contains the following express exclusion to that effect:

**Exclusions - What This Agreement Won't Cover**

\* \* \*

**Control of property.** We won't cover property damage to any of the following property:
- Property that's owned by you, any of your partners or co-ventures if you're a partnership or joint venture, or any of your members or managers if you're a limited liability company.
- Property that's owned by your subsidiary or parent organization more than 50% owned by you or your subsidiary or parent organization.

- Aircraft or watercraft that's owned, rented, leased, borrowed, or used by, or in the care, custody, or control of, any protected person.

Nor will we cover property damage to any of the following property, but only to the extent any protected person is required by contract to insure against damage to that property:

- Property that isn't described in the first paragraph of this exclusion and is rented, leased, or borrowed from others, occupied, or used by any protected person.
- Property that isn't described in the first paragraph of this exclusion and is in the care, custody, or control of any protected person.

## B.   DEFENDANT'S CLAIM

14.   Defendant alleges Hurricane Katrina damaged two production fields owned or operated by it - Quarantine Bay and Eloi Bay.  As reported by Defendant, immediately following the hurricane, their first priority was to contain and stop any source of pollution. It therefore set up a temporary command post in Houma, Louisiana for the assembly and deployment of personnel and marine and aerial equipment.  Their response included pollution containment boom, pads, skimmers, and truck transportation required to respond to affected areas.

15.   Once teams were put into place and the major pollution was either stopped or contained, major salvage operations thereafter commenced with the removal of destroyed tank battery facilities, which included tons of broken concrete platforms and creosote support pilings and clusters, as well as hundreds of pieces of lost production equipment (separators, treaters, headers, generators, compressors, fuel gas vessels, storage tanks, dehydration and filtering systems, engines and several thousand feet of mangled piping) that had to be removed from the sea floor.

50065                                           7

16.   St. Paul received Defendant's initial production of invoices and claim support for its Hurricane Katrina loss in July and October 2006. At that time, Defendant's claimed losses for the Quarantine Bay and Eloi Bay fields were $3,018,594.41 and $4,856,974.73, respectively.

17.   St. Paul reviewed the initial claim supports and found evidence supporting pollution clean-up costs of $291,775.71 for Quarantine Bay and $1,082,832.72 for Eloi Bay. St. Paul therefore issued a partial reimbursement for the $1,374,608.43 in approved costs on January 10, 2007. Payment consisted of a $1,000,000 payment of full limits under the Primary Policy and a $374,608.43 payment under the Excess Policy.

18.   St. Paul continues to evaluate the Defendant's claims on an ongoing basis and has requested that Defendant provide it with documentation of its claims.

19.   In May 2007, St. Paul received another set of invoices and claim support documents from Defendant. The Quarantine Bay supplemental portion totaled $2,627,887.03, while the Eloi Bay share amounted to $3,691,229.41. However, a majority of these invoices were previously submitted to St. Paul by Defendant.

20.   St. Paul's review reveals that $98,662.87 of Defendant's May 2007 supplemental claim submission (which totaled $6,319,116.44) pertains to pollution clean-up costs. St. Paul's payment of this portion of Defendant's supplemental claim is forthcoming. St. Paul believes that the remaining portion of the submitted claim is not covered under the terms and conditions of the Excess Policy.

21.    Defendant continues to submit expenses related to wreck and debris removal, construction and re-build costs, overhead, and salvage operations and St. Paul's adjusting and review of Defendant's submissions are ongoing.

22.    Defendant's claim submissions to date exceed $15,000,000.  St. Paul believes that some or all of Defendant's claim is not covered under the terms and conditions of either the Primary or Excess Policy.  The Defendant disagrees with St. Paul's position, thus creating an actual and justiciable controversy between the parties.

## VI.

## REQUEST FOR DECLARATORY RELIEF

23.    St. Paul incorporates by reference paragraphs 1 through 20 of the Complaint.

24.    St. Paul respectfully requests that the Court declare that all or some of the Defendant's claims are not covered under the terms and conditions of the Excess Policy and that St. Paul has no duty to indemnify Defendant for any such uncovered claims.  St. Paul further seeks a declaration from the Court that Defendant's failure to provide adequate claim supports constitutes a failure to meet a condition precedent under the excess policy.

## VII.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff St. Paul Surplus Lines Insurance Company requests that citation be issued and served on Defendant Cox Operating, LLC and that upon final hearing the Court declare the following:

50065                                    9

a.  That all or some of the Defendant's claims are not covered under the terms and conditions of the Excess Policy and that St. Paul has no duty to indemnify Defendant for any such uncovered claims;

b.  That Defendant's failure to provide adequate claim supports constitutes a failure to meet a condition precedent under the excess policy;

c.   That St. Paul is entitled to reasonable and necessary attorney fees and costs of suit; and

d.  That St. Paul be awarded such other and further relief to which it may be justly entitled.

Respectfully submitted,

**WESTMORELAND HALL, P.C.**

By: _Wendy Blanchard Hall_

Wendy Blanchard Hall
State Bar No. 24011522
Erik D. Garza
State Bar No. 24028523
2800 Post Oak Boulevard, 64th Floor
Houston, Texas 77056
Telephone:  (713) 871-9000
Telecopier:  (713) 871-8962

**ATTORNEYS FOR DEFENDANT
ST. PAUL SURPLUS LINES
INSURANCE COMPANY**

50065                                                  10