## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ST. PAUL SURPLUS LINES** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| **Plaintiff,** | § | |
| **V.** | § | **C.A. No.4:07-cv-02724** |
| | § | |
| **COX OPERATING, LLC.** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER VENUE

Respectfully submitted,

**WESTMORELAND HALL, P.C.**

Wendy Blanchard Hall
State Bar No. 24011522
Federal Bar No. 24096
Erik D. Garza
State Bar No. 24028523
Federal Bar No. 26981
2800 Post Oak Boulevard, 64th Floor
Houston, Texas 77056
Telephone: (713) 871-9000
Telecopier: (713) 871-8962

**ATTORNEYS FOR PLAINTIFF,**
**ST. PAUL SURPLUS LINES**
**INSURANCE COMPANY**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **ST. PAUL SURPLUS LINES** | § |
| **INSURANCE COMPANY** | § |
| | § |
| **Plaintiff,** | § |
| **V.** | § |
| | § |
| **COX OPERATING, LLC.** | § |
| | § |
| **Defendant.** | § |

**C.A. No.4:07-cv-02724**

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Cox's Hurricane Katrina Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.    St. Paul's Payment of Legitimate Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    D.    The Parties' Dispute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    E.    St. Paul Institutes This Declaratory Judgment Action on August 23, 2007 . . . . . . 6

    F.    Cox Initiates a Duplicative Junior Action in Louisiana on August 27, 2007  . . . . 6

    G.    Cox's Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

LEGAL ARGUMENT & AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    This Court Has Prior Jurisdiction Over The Common Subject Matter . . . . . . . . . 7

         1.    This suit was filed first and involves the same parties
             and controversy as Cox's junior action . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2.  Cox's case law supporting its argument that this court should
    not exercise its discretion under the Declaratory Judgment Act
    to hear this case does not apply-as the cases cited by Cox <u>only</u>
    involved competing federal and state lawsuits ....................... 9

3.  The first-to-file rule applies when two federal cases are
    pending in different federal courts .............................. 10

4.  A review of the relevant factors also weighs in favor of this Court
    exercising jurisdiction over this declaratory action ................. 12

    a.  There is no pending state court proceeding ................. 12

    b.  St. Paul's Declaratory Action was neither anticipatory
        nor forum shopping .................................... 13

    c.  There is no inequity in permitting St. Paul to gain
        precedence in time and forum in Houston .................. 14

    d.  There is no inconvenience to parties or witnesses ............ 15

B.  Venue is Proper in Houston ........................................... 17

    1.  Policy negotiations and the issuance of the policies are a substantial
        part of the events or omissions giving rise to the claim .............. 17

    2.  A substantial part of the events giving rise to the claim occurred in
        Houston ..................................................... 18

    3.  Venue is also appropriate in Houston because Texas law will apply ... 21

C.  Cox's Motion to Transfer Venue Should be Denied ....................... 23

    1.  The Applicable Law on 28 U.S.C. §1404(a) Transfers .............. 23

    2.  Cox Has Failed to Meet the Requisites for a §1404(a) Transfer ....... 25

        a.  The private factors weigh against transfer .................. 25

        b.  The public factors weigh against transfer .................. 27

PRAYER ................................................................. 29

# TABLE OF AUTHORITIES

## CASES

*Aetna Life Ins. Co. v. Haynesworth*, 300 U.S. 227 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re American Cyanamid Co.*, 1991 WL 197208 (E.D.La. Aug. 14, 1991) . . . . . . . . . . . . . . . . 17

*American Motorists Ins. Co. v. Cellstar Corp.*, 2003 WL 342257 (5th Cir. 2003) . . . . . . . . 17-18

*Breese v. Hadson Petroleum, Inc.*, 955 F.Supp. 648 (M.D.La. 1996) . . . . . . . . . . . . . . . . . . . . . 23

*Brillhart v. Excess Ins. Co. Of Am.*, 316 U.S. 491 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Brotherhood of Locomotive Firemen & Enginemen v. Central of Georgia Railway Co.*,
411 F.2d 320 (5th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662 (5th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . 8

*Denman by Denman v. Snapper Div.*, 131 F.3d 546 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 22

*Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823 (S.D.Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . 26

*Garner v. Wolfbinbarger*, 433 F.2d 117 (5th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94 (5th Cir. 1992) . . . . . . . . . . . . . . . . . 10, 12, 15

*Gruber v. Lambert*, 2004 WL 813229 (N.D.Tex. Apr. 13, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Horseshoe Entm't*, 227 F.3d 429 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Okpalobi v. Foster*, 190 F.3d 337 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pacific Employers, Inc. Co. v. M/V CAPT. W.D. CARGILL*, 751 F.2d 801 (5th Cir. 1985) . . . . . . 9

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Mann v. Hortex Inc.*, 751 F.2d 801 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Mission Ins. v. Puritan Fashions Corp.*, 706 F.2d 599 (5ᵗʰ Cir. 1983) . . . . . . . . . . . . . . . . . . . . . 9

*Resure, Inc. v. Chemical Distributors, Inc.*, 927 F.Supp. 190 (M.D.La. 1996) . . . . . . . . . . . . . 23

*Rosas v. Raytheon Aircraft Co.*, 2007 WL 1520992 (S.D. Tex. May 21, 2007) . . . . . . . . . . . . 11

*Rowan Companies, Inc. v. Griffin*, 876 F.2d 26 (5ᵗʰ Cir. 1989) . . . . . . . . . . . . . . . . . 8, 12-13, 15

*Save Power v. Syntek Fin. Corp.*, 751 F.3d 801 (5ᵗʰ Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Scott-Burr Stores Corp. v. Wilcox*, 194 F.2d 989 (5ᵗʰ Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F.Supp. 455 (S.D.Tex. 1996) . . . . . . . . . . . . . 21

*Sherwin-Williams, Co. v. Holmes County*, 343 F.3d 383 (5ᵗʰ Cir. 2003) . . . . . . . . . . . . . . . . . . 14

*Smith v. McIver*, 22 U.S. 532 (1824) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Springer v. Allstate Life Ins. Co.*, 731 N.E.2d 1106 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sutter Corp. v. P&P Industries, Inc.*, 125 F.3d 914 (5ᵗʰ Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 11

*Tellis Software, Inc. v. Pokertek, Inc.*, 2007 WL 2314316 (S.D.Tex. Aug. 10, 2007) . . 24, 26-27

*The Cadle Company v. Whataburger of Alice, Inc.*, 174 F.3d 299 (5ᵗʰ Cir. 1999) . . . . . . . . . . 11

*The Rice Company (Suisse) S.A. v. James J. Flanagan Shipping Corp.*,
2006 WL 298194 (S.D.Tex. Oct. 16, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*TIG Ins. Co. v. NAFCO Ins. Co.*, 177 F.Supp.2d 561 (N.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . 17

*Time, Inc. v. Manning*, 366 F.2d 690 (5ᵗʰ Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United Nat. Ins. Co. v. EOG Resources, Inc.*, 2007 WL 3001668
(S.D.Tex. Oct. 11, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-27, 29

*In re Volkswagen AG*, 371 F.3d 201 (5ᵗʰ Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Volkswagen of America*, 2007 WL 3088142 (5ᵗʰ Cir. Oct. 24, 2007) . . . . . . . . . . . . . . . . 27

*West Coast Liquidators, Inc. v. Commerce & Industry, Ins. Co.*,
1999 WL 52150 (E.D.La. Feb. 1, 199) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

iv

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985) . . . . . . . 10-11

*Williams v. Brown's Dairy*, 2003 WL 21634951 (5th Cir. July 3, 2003) . . . . . . . . . . . . . . . . . . . 28

*Wilson v. Seven Falls Co.*, 515 U.S. 277 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATUTES

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23, 25

28 U.S.C. § 1391(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 4(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 11(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. Ins. Code Ann.§ 21.42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## RESTATEMENTS

Restatement (Second) of Conflict of Laws § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## OTHER PERIODICALS

Barry R. Ostrager & Thomas R. Newman,
    *Handbook on Insurance Coverage Disputes* § 1.01[d] (13th ed. 2006) . . . . . . . . . . . . . 19

Fed. Court Mgmt. Statistics, Judicial Case Load Profile: District Courts (2006)
    http://www.uscourts.gov/cgi-bin/cmsd2006.pl . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ST. PAUL SURPLUS LINES** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| **Plaintiff,** | § | |
| **V.** | § | **C.A. No.4:07-cv-02724** |
| | § | |
| **COX OPERATING, LLC.** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS OR**
**IN THE ALTERNATIVE TRANSFER VENUE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff St. Paul Surplus Lines Insurance Company (hereafter "St. Paul")
and files its Response to Defendant's Motion to Dismiss or in the Alternative Motion to Transfer
Venue and would respectfully show the Court as follows:

**I.**
**INTRODUCTION**

This Declaratory Judgment action concerns a coverage dispute over the terms and conditions
of a contract (a policy of insurance) that was negotiated, written, and issued in Houston, Texas. The
policy was delivered from Houston to a Dallas assured. The two parties to the contract have met
in Houston and have held teleconferences between Houston and Dallas to discuss their
disagreements over the assured's claim and what insurance coverage is provided under the terms
and conditions of the policy. The central dispute is over whether roughly $13,000,000 in losses
claimed by the Defendant are covered under the terms and conditions of the policy. St. Paul has
filed this Declaratory Judgment action in order to resolve the dispute.

51610

## A.   THE PARTIES

St. Paul provides Defendant Cox Operating, LLC ("Cox") with Oil and Gas Primary and

Umbrella Excess Liability Protection coverage pursuant to Policy Numbers MU5535386 (the

"Primary Policy") and MU05573763 (the "Excess Policy"), respectively, both with effective dates

of June 1, 2005 through June 1, 2006. *See Exhibit A, Primary Policy*; *Exhibit B, Excess Policy; see

also Exhibit C, Affidavit of Paul Zatopek,* ¶4. Cox is the named insured under both policies. *See

Exhibit A* at p.1; *Exhibit B* at p.1. The Primary Policy contains $1,000,000 per occurrence and

$2,000,000 aggregate limits and the Excess Policy has aggregate limits of $20,000,000 with a

$10,000 per occurrence deductible. *See Exhibit A* at p.18; *Exhibit B* at p.18. The St. Paul policies

provide typical oil and gas general liability coverage for ***third-party*** *bodily injuries and property

damage. See generally Exhibits A & B.*

## B.   COX'S HURRICANE KATRINA CLAIMS

Cox has now submitted a claim exceeding $15,000,000 to St. Paul under the Primary and

Excess Policies for alleged pollution damages arising out of Hurricane Katrina. *See Docket Instr.

12, Cox's Memorandum in Support of Its Motion to Dismiss or in the Alternative Transfer Venue*

("Cox's Motion") at p.3. However, Cox is not asserting a claim for third-party bodily injury or

property damage. Instead, *Cox seeks to recover its own **first-party** costs for major salvage and

wreck and debris removal operations under the policies' limited pollution coverage.* Cox maintains

the claim despite Cox's own salvage, re-build, and pollution consultant's concession that salvage

operations were commenced only *after the "pollution was either stopped or contained."*[1]  Thus,

---

[1]     *See Exhibit D*, Letter from Eagle Consulting, LLC, dated January 10, 2007. Salvage operations
included the removal of destroyed tank battery facilities, tons of broken concrete platforms, creosote
support pilings and clusters, and hundreds of pieces of lost production equipment (such as separators,

Cox's claim submissions for salvage and wreck removal expenses do not relate to pollution and are therefore not covered under the St. Paul policies.

In addition to non-covered expenses for salvage and wreck removal, Cox's "pollution" claim incredibly includes the premiums paid for Cox employees' life, accidental death and dismemberment, long-term disability, dental, and health insurance, as well as premiums for Cox's hull and machinery, protection and indemnity, and ocean cargo insurance policies. *See Exhibit C,* ¶6. Cox also submitted fines issued to it by the United States Coast Guard and further brazenly submitted for reimbursement the very deductible payable under the Excess Policy. *See id.*

## C.   ST. PAUL'S PAYMENT OF LEGITIMATE CLAIMS

St. Paul has diligently reviewed the entirety of Cox's voluminous claim submissions[2] and has now paid $1,473,271.30 for legitimate expenses related to pollution clean-up covered by the policies. *Exhibit C,* ¶7. These payments constitute the full Primary Policy limits of $1,000,000 and an additional $473,271.30 under the Excess Policy. *Id.* St. Paul has paid all amounts which it believes are covered by the pollution provisions of the policies and denies that any of the remaining submissions are covered.[3]

---

treaters, headers, generators, compressors, fuel gas vessels, storage tanks, dehydration and filtering systems, engines and several thousand feet of mangled piping) from the sea floor. *Id.*

[2]   These submissions "consisted of hundreds, if not thousands of pages of documentation..." *Cox's Motion* at p. 3.

[3]   *Id.,* ¶8. St. Paul also issued a reservation of rights, dated May 21, 2007, with respect to Plaintiff's claims under the Excess Policy.

## D.    THE PARTIES' DISPUTE

As part of its efforts to properly review and adjust Cox's claim, on May 16, 2007, representatives of Cox met with St. Paul representatives, including Paul Zatopek and others. Mr. Zatopek works in St. Paul's Houston, Texas office and is the Senior Claims Representative handling Cox's claim. *Exhibit C*, ¶9.  The meeting, which was held to discuss Cox's claim and coverage issues, occurred at Cox's offices in Dallas, Texas. *Id.*  Additionally, Mr. Zatopek has been communicating with Susan Fontaine of Technical Risks, Inc. ("Technical Risks"), located in Houston, Texas, since May 2007, to explain the coverage issues pertaining to Cox's claim and the defects in Cox's claim submissions.[4]

On August 23, 2007, *at the request of Cox*, a telephone conference was also arranged. *Exhibit C*, ¶11.  Cox's current Manager, Brad Cox,[5] Lora Bolger (Cox's Financial Controller), other Cox employees, and Ms. Fontaine attended for Cox. *Exhibit C*, ¶11.  Mr. Zatopek and St. Paul's counsel, Wendy Blanchard Hall, appeared for St. Paul. *Id.*  During the conference call, Cox's claim submissions were discussed and Mr. Zatopek told Cox that St. Paul's independent adjuster had reviewed all of Cox's claim submissions to that point and that only $98,622.87 in covered expenses remained on the claim. *Id.*, ¶ 12.  Accordingly , St. Paul would be sending a supplemental check to Cox for that amount but St. Paul did not believe any of the remaining submissions from Cox were covered under the Excess Policy. *Id.*  Mr. Zatopek personally sent Cox the $98,622.87 check on August 23, 2007. *Id.*, ¶ 18.  St. Paul's payments to Cox for the covered portion of Cox's Katrina loss under the Policies have been sent to Cox's office in Dallas. *Id.*

---

[4]     *Id.*,¶ 10.  Technical Risks is Cox's insurance Broker of Record. *See Exhibit E, Affidavit of George F. Howard* ,¶¶14-15; *see also Exhibit F, Broker of Record letter, dated January 3, 2006.*  The Broker of Record letter was issued by Cox's Manager, William L. Graham. *Exhibit F.*

[5]     *See Cox's Motion at Exhibit B*, ¶2.

Before and during this conference, Cox requested that St. Paul enter into a tolling agreement. *Id.*, ¶ 13. However, at <u>no</u> time did St. Paul agree to any tolling agreement. *Id.*, ¶ 14. To the contrary, during the August 23rd telephone conference Mr. Zatopek specifically advised that he did not believe the agreement was necessary. *Id.* Because Cox continued to insist on the tolling agreement, Ms. Blanchard Hall explained the legal reasons why St. Paul was not prepared to enter into a tolling agreement. *Id.*, ¶ 15. Mr. Cox then stated that he did not want to discuss the issue further and that Ms. Blanchard Hall should "contact my lawyer, Peck Hayne." *Id.*, ¶ 16. At no time during the call was Cox told to "be patient" while St. Paul reviewed Cox's claim submissions. *Id.*, ¶ 17.

Ms. Blanchard Hall called Mr. Hayne's office immediately following the conference call that morning, leaving her name and number and referencing Cox's claim. *See e.g. Cox's Motion at Exhibit C*, ¶8 (confirming receipt of voice message); *Id. at sub-exhibit 4* (indicating the voice message was left at 8:31 a.m.). Mr. Hayne did <u>not</u> ever return the phone call as requested. *See e.g. Cox's Motion* at p.4 (conspicuously omitting reference to any return phone call); *Id.* at *Exhibit C* (same).

Given Cox's reaction to the telephone conversation, St. Paul determined that Cox was not prepared to withdraw the remaining items of the claim and than an actual and justiciable controversy existed as to whether Cox's remaining $13,000,000 in claims for reimbursement were covered under the Excess Policy.[6] Additionally, despite Hurricane Katrina's landfall on August 29, 2005, Cox continues to maintain that its pollution remediation remains ongoing over two years later. However,

---

[6]     *See Exhibit C*, ¶19. As the Primary Policy limits have been paid and fully exhausted, the parties'
        remaining coverage dispute relates only to the Excess Policy. *See e.g. Cox's Motion* at p.4 (stating,
        "Because St. Paul paid the $1 million policy limits under the Primary Policy, the parties' ongoing
        dispute relates solely to the Excess Policy.").

Cox's "pollution" submissions continue to consist of expenses related to wreck and debris removal, construction and re-build costs, overhead, and salvage operations: Items which are not covered under the Excess Policy.

**E.   ST. PAUL INSTITUTES THIS DECLARATORY JUDGMENT ACTION ON AUGUST 23, 2007**

In light of the existing controversy and impasse between the parties St. Paul initiated this action on **August 23, 2007**, seeking a declaration of the parties' rights under the policies. *See e.g. Docket Instr. 1, Original Complaint for Declaratory Judgment.* A summons was issued shortly thereafter on August 30, 2007, and Cox was served three business days later on September 4, 2007. *See Docket Instr. 13, Return of Service; see also Cox's Motion at Exhibit* A, Declaration of Lora L. Bolger, ¶10 (confirming service on Cox's registered agent on September 4th). Although it was formally served on September 4th, Cox acknowledges it was first made aware of St. Paul's suit the day after it was filed, on August 24, 2007. *See Cox's Motion at Exhibit* A, ¶8 (admitting Cox's financial controller "was informed by a third party that St. Paul had filed suit against Cox in the United States District Court for the Southern District of Texas" on August 24th ); *Id.* at *Exhibit* B, Declaration of Brad Cox, ¶18 (stating, "the next day (Friday, August 24, 2007)... I learned that... St. Paul had... filed suit against Cox in Houston in federal court...").

**F.   COX INITIATES A DUPLICATIVE JUNIOR ACTION IN LOUISIANA ON AUGUST 27, 2007**

Notwithstanding Cox's prior knowledge of St. Paul's pending action in this Court, Cox and its counsel subsequently initiated a duplicative suit in federal court in Louisiana on **August 27, 2007.** *See Cox's Motion* at p. 4 (admitting Cox filed suit only *after* it learned of the pendency of this action); *Id. at Exhibit B*, ¶19 (authorizing "immediately" the filing of Cox's suit after learning of St. Paul's suit). A true and correct copy of Cox's Complaint in *Cox Operating L.L.C. v. St. Paul Surplus Lines Insurance Company*, C.A. No. 07-4542, in the United States District Court for the

Eastern District of Louisiana ("Cox's junior suit") is attached hereto as Exhibit G. Cox's junior suit involves the same parties as the instant suit (Cox and St. Paul), the same insurance policies (the Primary and Excess Policies), and the same insurance claim (Cox's alleged Hurricane Katrina pollution expenses). *Compare Exhibit G*, ¶¶ 7-22 *with Docket Instr. 1*, ¶¶ 5-11. Thus, the two lawsuits involve substantially similar, if not identical, issues.

## G.   COX'S MOTION

Cox now moves to dismiss this senior action arguing that the Court should decline to exercise its discretionary jurisdiction under The Declaratory Judgment Act and that venue is improper in Houston. In the alternative, Cox seeks to transfer this action to the Eastern District of Louisiana pursuant to 28 U.S.C. §1404(a). Cox's Motion should be denied *en toto* as the first-to-file rule applies, venue is proper in Houston, and because venue in Louisiana is not more convenient for the parties.

## II.
## LEGAL ARGUMENT & AUTHORITIES

Cox's motion to dismiss should be denied as this suit was first-to-be-filed, the Court has jurisdiction over this matter, and venue is proper in Houston.

## A.   THIS COURT HAS PRIOR JURISDICTION OVER THE COMMON SUBJECT MATTER

### 1.   This suit was filed first and involves the same parties and controversy as Cox's junior action.

This declaratory action was first filed on August 23, 2007, and pre-dates Cox's junior action which was subsequently filed on August 27th (and then only after Cox first learned of this suit). *Compare Exhibit G with Docket Instr. 1; see also Cox's Motion* at p. 4 (admitting Cox filed suit only *after* it learned of the pendency of this action); *Id. at Exhibit B*, ¶19 (authorizing the filing of Cox's suit after learning of St. Paul's suit).

St. Paul instituted this action pursuant to The Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*., the purpose of which "is to afford added remedy to one who is uncertain of his rights and who desires early adjudication thereof without having to wait until his adversary should decide to sue and to act at his peril in the interim." *Okpalobi v. Foster*, 190 F.3d 337, 347 (5th Cir. 1999). The declaratory judgment vehicle is also intended to provide a means of settling an actual controversy before it ripens into a violation of the civil or criminal law, or a breach of a contractual duty. *Scott-Burr Stores Corp. v. Wilcox*, 194 F.2d 989, 990 (5th Cir. 1992). The Declaratory Judgment Act merely requires that an actual and justiciable controversy exist between the parties. *See Aetna Life Ins. Co. v. Haynesworth*, 300 U.S. 227, 239-41, 57 S.Ct. 461, 463-64 (1937). "A controversy, to be justiciable, must be such that it can be presently litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) *(citing Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967)).

An actual and justiciable controversy exists between St. Paul and Cox as to whether Cox's remaining $13,000,00 in claims for reimbursement are covered under the Excess Policy. St. Paul clearly addressed this controversy in its *Original Complaint* when it sought the following relief:

> ...that the Court declare that all or some of the Defendant's claims are not covered under the terms and conditions of the Excess Policy and that St. Paul has no duty to indemnify Defendant for any such uncovered claims. St. Paul further seeks a declaration from the Court that Defendant's failure to provide adequate claim supports constitutes a failure to meet a condition precedent under the excess policy.

*Docket Instr. 1*, ¶24. Therefore, an actual and justiciable controversy was stated under The Declaratory Judgment Act.

Cox's junior action, also filed in federal court, involves the same parties as the instant suit-Cox and St. Paul. *Compare Exhibit G with Docket Instr. 1.* Likewise, both actions center upon the insurance contracts entered into between Cox and St. Paul (the Primary and Excess Policies) and whether coverage exists under the policies for Cox's claimed Katrina losses.[7] Thus, the two lawsuits involve substantially similar, if not identical, issues.

2.    **Cox's case law supporting its argument that this court should not exercise its discretion under the Declaratory Judgment Act to hear this case does not apply – as the cases cited by Cox <u>only</u> involved competing federal and state lawsuits.**

In the case at bar, both lawsuits have been brought in federal courts. Cox argues that this Court should not exercise its discretion to hear this Declaratory Judgment action and Cox's Motion affords ample discussion to the Court's discretionary ability to exercise jurisdiction under The Declaratory Judgment Act. However, Cox's cited authorities are not applicable to the dual lawsuit issue presented here because Cox's cases each involve federal declaratory judgment actions where the second-filed suit was filed in either state court or foreign jurisdictions. *See Cox's Motion* at pp.6-7, *(citing Pacific Employers Ins. Co. v. M/V CAPT. W.D. CARGILL*, 751 F.2d 801, 804 (5th Cir. 1985)) (involving declaratory action in Eastern District of Louisiana and parallel proceeding in Belgium); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175 (1942) (involving declaratory action in the federal District Court for Kansas and state garnishment proceeding in Missouri); *Wilson v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S.Ct. 2137, 2140 (1995) (involving declaratory action in Southern District of Texas and state court action in Travis County); *Mission Ins. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983) (involving declaratory

---

[7]     *Compare Exhibit G,* ¶¶ 7-22 *with Docket Instr. 1,* ¶¶ 5-11. Cox argues that the claims in its junior action differ because it is asserting Louisiana statutory claims. *Cox's Motion* at p. 7. However, the basis for Cox's claim (*i.e.,* coverage under the Excess Policy) is the same as the basis for the coverage dispute presented in this suit. Additionally, as addressed in II(B), *supra*, Texas, not Louisiana, law applies.

action in Western District of Texas and state action in California); *Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94, 96 (5th Cir. 1992), *cert. dismissed*, 507 U.S. 102 (1993) (involving declaratory action in Southern District of Texas and state action in Tarrant County). In each of these cases, the federal courts recognized issues of competing state and federal cases and opted to allow the state courts to handle the matters.

Accordingly, Cox has not cited to any applicable precedent or cases which are factually on point with this case. Each of the preceding cases cited by Cox involve one state or foreign case and one federal case—unlike here where both St. Paul and Cox have filed suit in federal courts. *Compare Exhibit G with Docket Instr. 1.* Therefore, Cox has cited to no applicable law to support its contention that this Court should refrain from exercising its discretion to hear this case. Furthermore, the appropriate rule to follow when two substantially similar cases have been filed in two <u>federal</u> <u>districts</u> is the first-to-file rule.

### 3. The first-to-file rule applies when two federal cases are pending in different federal courts.

In situations such as the present one, the first-to-file rule, which Cox's Motion wholly fails to address, applies. Under the first-to-file rule, "the court with prior jurisdiction over the common subject matter should resolve all issues presented in related actions." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985) *(citing Mann Mfg. Inc. v. Hortex, Inc.,* 439 F.2d 403, 408 (5th Cir. 1971)); *Brotherhood of Locomotive Firemen & Enginemen v. Central of Georgia Railway Co.,* 411 F.2d 320, 325 (5th Cir. 1969) (stating, "It was long ago laid down by Chief Justice Marshall as a salutary rule that in all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it.") *(further citing Smith v. McIver,* 22 U.S. 532, 535 (1824)). Thus, when related cases are pending before two federal courts, the court in which the case

was last filed should refuse to hear it if the issues raised by the cases substantially overlap. *The Cadle Company v. Whataburger of Alice, Inc.*, 174 F.3d 299, 603 (5th Cir. 1999) (*citing Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)); *West Gulf*, 751 F.2d at 728. The rule does not, however, require that cases be identical- the crucial inquiry is one of "substantial overlap." *Save Power*, 121 F.3d at 950.

The policy behind the rule was discussed by the *Cadle* Court:

> Courts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court. Because the second-filed court is not binding the litigants before it to a ruling of the first, there is no reason to examine the jurisdiction of the first-filed court.    Such a requirement would actually undercut the values of economy, consistency, and comity that the rule is designed to maximize: the jurisdictional ruling of the second-filed court would either conflict with a ruling already made, rehash an issue already decided, or trench on a sister court's treatment of the issue before it has been reached there.

*Cadle*, 174 F.3d at 604 (emphasis in original). "Once the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed." *Id.* at 605-6 (*citing Mann*, 439 F.2d at 407). Hence, the rule "not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Id.* at 606 (*citing Sutter Corp. v. P&P Industries, Inc.*, 125 F.3d 914, 920 (5th Cir. 1997)); *see also Mann,* 439 F.2d at 406-07 (involving first-filed federal action in New York and two federal suits in Texas; the New court enjoined the first Texas suit and the Fifth Circuit transferred the second one to the New York court); *Rosas v. Raytheon Aircraft Co.*, 2007 WL 1520992 (S.D. Tex. May 21, 2007) (addressing rule where declaratory

51610                                          Page 11 of 30

judgment was filed first followed by two subsequent suits; one subsequent suit was stayed and the other transferred to the first-filed court).

The two pending cases here do more than overlap, they are virtually identical. Both cases involve the same insurance policies, the same parties, and the same claim. St. Paul's Declaratory Judgment action was filed first, therefore, this Court has prior jurisdiction over the common subject matter and is the appropriate court to hear this case.

## 4.    A review of the relevant factors also weighs in favor of this Court exercising jurisdiction over this declaratory action.

The first-to-file rule and the policies behind it should not be vitiated merely because Cox was not first made aware of when or where St. Paul intended to file suit[8] and because Cox subsequently filed a retaliatory lawsuit in turn. Likewise, a review of the factors pertinent to a district court's determination of whether to decide a declaratory suit weigh in favor of this Court exercising jurisdiction. *See e.g. Rowan*, 876 F.2d at 29 (espousing various factors); *see also Granite State*, 986 F.2d at 96 (stating that the *Rowan* list "is neither exhaustive, nor is it exclusive or mandatory."). The *Rowan* factors include the following: (1) the existence of a pending state court proceeding in which the matters in controversy between the parties may be litigated; (2) whether the declaratory complaint was filed in anticipation of another suit being used for the purpose of forum shopping; (3) the possible inequities in permitting the plaintiff to gain precedence in time and forum; or (4) the inconvenience to the parties or witnesses. *Granite State,* 986 F.2d at 96 (*citing Rowan*, 876 F.2d at 29).

### a.    There is no pending state court proceeding.

As a threshold matter, there is no pending *state court* proceeding in which the matter in

---

[8]    *See e.g. Cox's Motion at Exhibit C*, ¶8 (complaining of lack of notice of Cox's potential filing of suit). Notably, Cox's Motion is devoid of any authority requiring any such pre-suit notification.

controversy between the parties may be litigated. *See Rowan*, 876 F.2d at 28. Instead, there are two

pending federal court actions and under the first-to-file rule, the first-filed action is the appropriate

court to determine the merits of substantially similar issues.

> **b.    St. Paul's Declaratory Action was neither anticipatory nor forum shopping.**

St. Paul's action was neither anticipatory nor forum shopping. St. Paul and Cox were at an

impasse regarding coverage under the Excess Policy for Cox's remaining $13,000,000 in claim

submissions and no tolling agreement had been entered into by the parties. St. Paul therefore filed

this declaratory action in Houston, where the policies were negotiated, placed, underwritten, and

delivered. *See* Section II(B), *supra* (discussing propriety of venue in Houston). **Texas is also the**

**proper forum for this dispute because Texas law applies**. *See id.* (addressing application of

Texas law to interpretation of the policies because the policies were underwritten, negotiated, placed

and delivered in Texas and because the insured, Cox, is located in Texas).[9]

St. Paul's suit was not anticipatory as Cox has freely conceded that it only filed suit in

Louisiana *after* learning of the pendency of St. Paul's action here. *See Cox's Motion* at p.4

(admitting Cox filed suit only after it learned of the pendency of this action); *Id. at Exhibit B*, ¶18

(admitting authorizing Cox's suit after learning of St. Paul's suit); *see also* FED.R.CIV.P. 11(b)

(certifying that signed pleadings are "not being presented for any improper purpose, such as to

harass or to cause unnecessary delay or needless increase in the cost of litigation."). There is simply

no evidentiary support in Cox's Motion indicating that Cox intended to file suit *in the absence of*

St. Paul's pending action. In this regard, St. Paul's action is not anticipatory, but rather Cox's is

retaliatory.

---

[9]    An alternative venue for this action would have been the Northern District of Texas, where Cox is located.

Page 13 of 30

Furthermore, the mere fact that a declaratory judgment action is brought in anticipation of other suits does not, in and of itself, require dismissal of the declaratory judgment action by the federal court:

> The filing of every lawsuit requires forum selection. Federal declaratory judgment suits are routinely filed in anticipation of other litigation. The courts use pejorative terms such as "forum shopping" or "procedural fencing" to identify a narrower category of federal declaratory judgment lawsuits filed for reasons found improper and abusive, other than selecting a forum or anticipating related litigation. Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive "forum shopping."

*Sherwin-Williams, Co. v. Holmes County,* 343 F.3d 383, 391 (5th Cir. 2003). Here, there is also no pending state court proceeding.

St. Paul's suit is thus not anticipatory. St. Paul did not file suit until after a coverage dispute had arisen and St. Paul did not file suit before a time in which Cox could have filed suit. Further, St. Paul was not forum shopping. St. Paul filed suit in the same district where the policy underlying this suit was negotiated, underwritten, and issued, where the claim against the policy was made, and where the dispute over the policy terms and conditions is pending.

### c.    There is no inequity in permitting St. Paul to gain precedence in time and forum in Houston.

There is no inequity in permitting St. Paul to gain precedence in time and forum in Houston, where venue is proper. St. Paul determined that Cox's remaining claim was not covered, the parties did not enter into a tolling agreement, and St. Paul did not make any representations to Cox regarding the filing of any lawsuit. While Cox bemoans the fact it was not given any notice of St. Paul's intent to file suit, no such obligation was required of St. Paul. Additionally, a careful review of the evidence in Cox's Motion merely confirms that on August 23rd: (1) Cox told St. Paul's

counsel to contact Cox's attorney; (2) St. Paul's counsel in fact attempted to contact Cox's attorney

regarding the reasons St. Paul could not enter into Cox's proposed tolling agreement; and (3) Cox's

counsel did not return the phone call as requested. *See e.g. Cox's Motion at Exhibit B,* ¶17; *Id.* at

*Exhibit* C, ¶¶8-10. That St. Paul chose to initiate an action to determine whether coverage exists

under the Excess Policy, as Cox has now done in Louisiana, is not inequitable.

Nor can it be said that any inequity exists where St. Paul did not delay in prosecuting this

action: a summons was promptly issued on August 30, 2007, and Cox was served with process three

business days later on September 4, 2007. *See e.g. Cox's Motion at Exhibit* A, ¶10 (confirming

service on Cox's registered agent on September 4th). Thus, St. Paul can not be said to have been

sitting idly by where it served Cox, in Louisiana, within twelve (12) days of filing of suit. This is

especially true considering that Federal Rule of Civil Procedure 4(m) allows a plaintiff 120 days

within which to serve its lawsuit on a defendant.[10] Although Cox goes to great lengths to note that

it served St. Paul in the Louisiana action first, this is irrelevant under the first-to-file rule, which

looks to the date of filing, not the date of service.

### d. There is no inconvenience to parties or witnesses.

Finally, this action should proceed here because Cox has failed to show any inconvenience

to the parties or witnesses. *See Rowan*, 876 F.2d at 28. To that end, Cox erroneously argues that

"St. Paul cannot show that Houston would be a more convenient forum than the Eastern District of

Louisiana..." *Cox's Motion* at p.9. In so doing, Cox confuses the *Rowan* factor at hand: the issue

is not whether St. Paul has failed to show that Houston is a *more convenient* forum, but rather that

Cox has failed to show that Houston is an *inconvenient* forum to the parties or the witnesses.

*Granite State*, 986 F.2d at 96.

---

[10]     FED.R.CIV.P. 4(m). Even then, this deadline can be extended by the court for "good cause for the failure [to serve]." *Id.*

While Cox's Motion contends that "no material witnesses are located within this district, and all material documentation and evidence is located outside this district",[11] the declaration cited for this proposition only states that the declarant, Brad Cox, is merely "not aware" of any witness living in the district.[12]   Contrary to Mr. Cox's understanding, however, a wealth of documentation and evidence exists in this district as the policies at issue were negotiated, placed, underwritten and delivered from Houston.  For example, J.H. Blades & Co., Inc. ("J.H. Blades"), St. Paul's producing broker who handled the negotiation, placement, underwriting, and delivery of the policies, is located in Houston.  *See Exhibit E*, ¶¶3-4.  Cox's Broker of Record, Susan Fontaine of Technical Risks, is also located in Houston.  *See id.,* ¶14.  Additionally, the claims against the policy were made in Houston.  *See id.*, ¶16.  Finally, St. Paul's handling and adjusting of the claim occurred in Houston.  *See Exhibit C,* ¶5.    These are all sources of information and documentation pertinent to the adjudication of the parties' dispute that are located within this district.  Furthermore, as illustrated in Cox's Motion, Cox's own corporate representatives, including its Financial Controller and Manager, are located in Texas, not Louisiana.  *See Cox's Motion at Exhibits A & B* (attesting to declarations in Dallas County, Texas).    Therefore, Cox has failed to show that the Court's determination of this declaratory action in Houston is an inconvenience to the parties and witnesses.

Considering all of the foregoing, it is clear the *Rowan* factors weigh heavily in favor of this Court retaining jurisdiction over this matter and deciding the merits of the instant Declaratory Judgment action.

---

[11]     *Id.*

[12]     *Id. at Exhibit B*, ¶20.  No verified support is given for the assertion relating to lack of material documentation and evidence in this district.

**B.    VENUE IS PROPER IN HOUSTON**

Cox's motion to dismiss should also be denied as venue is proper in Houston.

**1.    Policy negotiations and the issuance of the policies are a substantial part of the events or omissions giving rise to the claim.**

Venue properly rests in the Southern District of Texas-Houston Division under 28 U.S.C.

§1391(a) because it is a judicial district in which a substantial part of the events or omissions giving

rise to the claim occurred. *See e.g. Docket Instr. 1,* ¶6; *see also* 28 U.S.C. §1391(a) (allowing for

venue in a "...district in which a substantial part of the events or omissions giving rise to the claim

occurred..."). Courts addressing venue in the context of coverage disputes such as the one at present

have found that a "substantial part of the events or omissions giving rise to the claim" occur where

the policies were negotiated and issued. *See e.g., American Motorists Ins. Co. v. Cellstar Corp.* 61

Fed. Appx. 119, 2003 WL 342257 (5th Cir. 2003) (affirming venue in Houston where assured's

broker located in Houston, policy negotiations occurred in Houston, and endorsements issued in

Houston); *TIG Ins. Co. v. NAFCO Ins. Co.,* 177 F. Supp.2d 561 (N.D. Tex. 2001) (Sanders, J.)

(finding venue appropriate in Dallas where negotiations took place and  policies issued); *In re*

*American Cyanamid Co.,* Civ. A. Nos. 87-0742, 87-3998, 1991 WL 197208 (E.D.La. Aug. 14, 1991)

(stating venue proper where policies negotiated, written, issued, and delivered, and where loss

occurred).

The *American Motorists* case is particularly instructive as the facts presented there are

similar to the facts in this case. In *American Motorists*, the insured's broker procured insurance

from American Motorists Insurance Company ("AMICO"). *American Motorists,* 2003 WL 342257

at \*1. Much of the negotiations concerning the policy took place between the insured's broker and

AMICO's Houston office. *Id.* Likewise, the endorsements to the policy were transmitted through

the insured's broker in Houston. *Id.* In light of these contacts, the court stated that "significant events relating to the formation and execution of the policy occurred in Houston." *Id.* It therefore declined to overturn the district court's denial of the insured's motion to dismiss for improper venue. *Id.*

## 2.    A substantial part of the events giving rise to the claim occurred in Houston.

In the present case, numerous facts support venue in Houston. J.H Blades, which is an insurance broker located in Houston, has a contract with St. Paul that gives it authority to act as an underwriter to write policies up to certain limits. *See Exhibit E*, ¶5. In this underwriting capacity J.H. Blades was approached by EnRisk Services, Inc. ("Enrisk"), Cox's broker, to obtain insurance for Cox. *Id.* As part of the policy negotiations, a representative of Cox filled out an Energy Risk Application which was submitted to J.H. Blades in Houston via EnRisk. *Id.*; *see also Exhibit H*, Energy Risk Application; *Exhibit I*, Email from Laurel Kliever, dated May 5, 2005. The Application is a J.H. Blades form and has J.H. Blades' Houston address on its letterhead. *Exhibit E*, ¶6; *see also Exhibit H*. The Application was completed by Cox's authorized representative, David Huett of EnRisk, and was signed on May 31, 2005. *Exhibit I*, ¶6. Of import, Cox's authorized representative identified both Cox's mailing and physical address as "4925 Greenville Avenue, Suite 201, Dallas, Texas 75206." *Exhibit H.* There is no information anywhere in the completed Application giving St. Paul notice that Cox is a Louisiana company or that it maintains an office in Louisiana. *Id.*

Although Cox maintains in its Motion that its contract operator in Louisiana, Brammer Engineering "obtained" the Policies from St. Paul this is incorrect. *See Cox's Motion at Exhibit A*, ¶4 ; *see also id.*, ¶4 (contradicting this by admitting Cox's policies were "negotiated and placed through Enrisk..."). During negotiations for these policies, J.H. Blades never dealt with anyone from Cox in Dallas or Brammer Engineering in Louisiana. *Exhibit E*, ¶7. All policy negotiations took

place between George Howard, as lead underwriter, or Rob Morrell, Deputy Underwriter, for J.H. Blades in Houston and Cox's broker, EnRisk. *Id.*

Following these negotiations, insurance Binders were effected. *Id.,* ¶8 ; *see also Exhibit J,* Primary Policy Binder; *Exhibit K*, Excess Policy Binder. An insurance binder is a temporary policy until a formal policy is issued. Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 1.01[d], at 13 (13th ed. 2006) (*citing Springer v. Allstate Life Ins. Co.,* 94 N.Y.2d 645, 649, 710 N.Y.S.2d 298, 731 N.E.2d 1106 (2000)). Both Binders were prepared and issued by J.H. Blades in Houston. *Exhibit E,* ¶8; *see also Exhibit J* at p.1; *Exhibit K* at p.1. Both Binders were signed by Rob Morrell of J.H. Blades in Houston. *Exhibit E,* ¶8; *see also Exhibit J* at p.1; *Exhibit K* at p.1. The Binders were sent from J.H. Blades in Houston to EnRisk in Fort Worth. *See Exhibit E,* ¶9; *Exhibit L*, Email from Luey Kliner, dated June 2, 2005; *Exhibit M*, Letter from Luey Kliner, dated June 6, 2005. The Binders required that all notices of claim under the policies be sent to J.H. Blades in Houston. *Exhibit E,* ¶8; *Exhibit J* at p.2; *Exhibit K* at p.2.

The Binders also require that Cox's premiums for each of the policies be paid to J.H. Blades. *Exhibit E,* ¶9; *see also Exhibit J* at p.1; *Exhibit K* at p.1. J.H. Blades ultimately invoiced EnRisk for the policies' premiums, which also included charges for payment of the Texas Department of Insurance's surplus lines taxes and the Texas stamping fees. *Exhibit E,* ¶9; *see also Exhibit N*, J.H. Blades Invoice 67836; *Exhibit O*, J.H. Blades Invoice 67835. Cox misleads the Court by stating that these premiums were paid from Brammer to EnRisk. *Cox's Motion* at p.3. While it may be true that Cox's operator (Brammer) paid Cox's broker (EnRisk) the premiums; the policies were not legally bound until EnRisk, as an *agent* for Cox, paid the policy premiums to J.H. Blades in Houston. *Exhibit E,* ¶10. The Texas surplus lines taxes for the policies were paid by J.H. Blades in Houston. *Id.,* ¶11.

The actual policies were subsequently issued by St. Paul and were signed by George Howard of J.H. Blades, in Houston. *Id.*, ¶12; *see also Cox's Motion at Exhibit A at sub-exhibit 1*, pp.1, 5; *Id.* at sub-exhibit 2, pp.1, 3, 7. The policies include notices containing the Texas Department of Insurance's address and facsimile number for the resolution of premium or claim disputes. *Cox's Motion at Exhibit A at sub-exhibit 1*, p.3; *Id. at sub-exhibit 2*, p.5. The originals of the policies were delivered from J.H. Blades in Houston to EnRisk in Fort Worth. *Exhibit E,* ¶13; *see also Exhibit P*, Letter from Luey Kliner, dated August 26, 2005.

Additionally, Endorsement No. 1 for the Excess Policy was issued by J.H. Blades in Houston and thereafter transmitted to Cox's current Broker of Record, Technical Risks, also in Houston. *Id.,* ¶14; *Exhibit Q*, Letter from Marisela Rawls, dated April 3, 2006. Technical Risks has been Cox's Broker of Record handling its Katrina claims under the Policies since January 2, 2006. *Exhibit E,* ¶15; *Exhibit F*. Once they became Cox's Broker of Record, J.H. Blades also forwarded Technical Risks copies of the Policies. *Exhibit E,* ¶15; *Exhibit R*, Letter from Marisela Rawls, dated January 9, 2006.

Furthermore, Cox's notice of claim for the Katrina pollution damages made the basis of this suit was submitted by Cox to J.H. Blades in Houston. *Exhibit E,* ¶16; *Exhibit S*, Email correspondence containing Cox's Notice of Claim to J.H. Blades. Finally, St. Paul's payments to Cox for the covered portion of Cox's Katrina loss under the Policies were sent from St. Paul in Houston to Cox in Dallas. *See Exhibit C,* ¶18; *see also Cox's Motion at Exhibit A, sub-exhibit 4* (confirming payment to Cox at 4514 Cole Ave., Ste. 1175, Dallas, Texas).

Thus, as in *American Motorists*, venue is proper in Houston because a substantial part of the events or omissions giving rise to the parties' disputed claims occurred here: The policies were negotiated, placed, and underwritten in Houston, the policies were delivered from Houston, the

Excess Policy's endorsement was issued in Houston and delivered to Cox's broker in Houston, Cox's claim was made in Houston, St. Paul's handling of Cox's claim is in Houston, St. Paul and Cox met to discuss the claim in Houston, and Cox's current broker handling this claim is located in Houston.

That venue may also lie in Louisiana, where Cox's insured *res* is located, is of no consequence, as "[i]t is, of course, possible in a given case that there could be more than one district in which a substantial part of the events ... giving rise to a claim occurred, and therefore there could be more than one proper venue for a certain cause of action." *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 458-59 (S.D.Tex. 1996) (Atlas, J.). Furthermore, "[a] court is not obliged to determine the '*best*' venue for a cause of action pending before it, but rather must determine only whether or not its venue is *proper*." *Id.* at 459 (emphasis added). Therefore, even if another district's contacts with the controversy are more substantial than the district in which the case has been filed, which is not conceded by St. Paul, the court need only determine whether substantial events occurred in that district.[13]

This action is an insurance coverage dispute involving an insurance policy that was negotiated, placed, issued, and endorsed in Houston. Additionally, the handling of the claim occurred in Houston. Thus, Houston "is a judicial district in which a substantial part of the events or occasions giving rise the claim occurred." Accordingly, venue is proper in Houston.

### 3.   Venue is also appropriate in Houston because Texas law will apply.

Venue is better situated in Houston because Texas law will apply to the dispute between

---

[13]      *Id.*; *see also Gruber v. Lambert,* No. 3-03-CV-1095-BD(L), 2004 WL 813229, at *6 (N.D.Tex. Apr. 13, 2004) (stating, "Although [another forum] also has a significant connection to this dispute, the court need not decide which forum is better suited to hear the case. It is enough that venue is proper in this district.").

the parties. The conflicts of law analysis is state-specific, which is to say that each state has adopted its own test. Federal courts apply the conflict-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Denman by Denman v. Snapper Div.,* 131 F.3d 546, 548 (5th Cir.1998). Here, the court looks to Texas conflicts of law principles. In *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984), the Supreme Court of Texas adopted the "most significant relationship" approach for use in contract cases as set forth in the Restatement (Second) of Conflict of Laws § 6. *Id.* at 420-21. Under the Restatement's approach, at the first step"[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Restatement (Second) of Conflict of Laws § 6(1). The Texas Insurance Code contains just such a directive:

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.

TEX.INS.CODE ANN. §21.42. Thus, Texas law will apply as the Assured is located in Texas. Cox is listed on the policies as being located at 4925 Greenville, Avenue, Suite 201, Dallas, Texas 75206. *See Exhibit A* at p.4; *Exhibit B* at p.4. Likewise, Cox's Energy Risk Application for insurance lists its mailing and physical address as being a the Greenville address in Dallas. *See Exhibit H.* While Cox is quick to point out to the Court that it is a Louisiana limited liability company, it omits the fact that its principal place of business is in Dallas, Texas and that its application for insurance listed only its Dallas, Texas address.

51610                                 Page 22 of 30

Even in the absence of the Insurance Code's statutory directive, in cases interpreting insurance policies courts apply the law of the state in which the insurance policy was executed rather than the state where the accident occurred. *See e.g. West Coast Liquidators, Inc. v. Commerce & Industry Ins. Co.*, Nos. Civ.A. 98-2200S/W, 97-803, 97-775, 1999 WL 52150, at *3 (E.D.La. Feb. 1, 1999); *Breese v. Hadson Petroleum, Inc.,* 955 F.Supp. 648, 650 (M.D.La. 1996); *Resure, Inc. v. Chemical Distributors, Inc.*, 927 F.Supp. 190, 192 (M.D.La. 1996). This is because states have a "significant policy interest in regulating insurance policies issued there." *West Coast Liquidators*, 1999 WL 52150, at *4 (*citing Breese,* 955 F.Supp. at 650). Here, the insurance policies were executed in Texas. *See Exhibit E,* ¶¶4, 12; *see also Cox's Motion at Exhibit A, sub-exhibit 1*, pp.1, 5 (containing signature of George F. Howard of J.H. Blades for St. Paul); *Id. at sub-exhibit 2*, pp.1, 3, 7 (same). *Therefore, Texas law will govern the interpretation of the policies regardless of whether venue remains here in Houston or in the event the matter is transferred to Louisiana.*

## C.   COX'S MOTION TO TRANSFER VENUE SHOULD BE DENIED

Cox's motion to transfer venue should be denied as Cox has failed to meet the requisites for a transfer under 28 U.S.C. §1404(a) and because the Eastern District of Louisiana is not a more convenient forum.

### 1.    The applicable Law on 28 U.S.C. §1404(a) Transfers.

Section 1404(a) states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." 28 U.S.C. §1404(a). The burden is on Cox, however, to show that "considerations of convenience and justice weigh *heavily in favor* of a transfer." *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1996); *see also United Nat'l Ins. Co. v. EOG Resources, Inc.*, 2007 WL 3001668, at *2 (S.D. Tex. Oct. 11, 2007) (Miller, J.). The factors evaluated in this analysis are entrusted to the

sound discretion of the district court. *Garner v. Wolfbinbarger*, 433 F.2d 117, 119 (5th Cir. 1970); *Tellis Software, Inc. v. Pokertek, Inc.*, 2007 WL 2314316, at *5 (S.D. Tex. Aug. 10, 2007) (Miller, J.) "The court must engage in a two step inquiry when determining whether to transfer a case. First, it must determine if the judicial district sought by the movant is one in which the case could have originally been brought." *In re Horseshoe Entm't*, 227 F.3d 429, 422 (5th Cir. 2003); *United Nat'l*, 2007 WL 3001668, at *2. Second, the court must determine whether convenience of the parties and witnesses, and the interest of justice, require that the case be tried elsewhere. *In re Horseshoe Entm't*, 227 F.3d at 422.; *United Nat'l*, 2007 WL 3001668, at *2.

The second step requires a lengthier analysis and usually becomes the critical inquiry in a motion to transfer. *In re Horseshoe Entm't*, 227 F.3d at 422; *United Nat'l*, 2007 WL 3001668, at *2. This step includes two sets of factors the court must consider: private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *United Nat'l*, 2007 WL 3001668, at *2. None of the factors is given dispositive weight. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *United Nat'l*, 2007 WL 3001668, at *2.

The private interest factors consist of: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; and (5) the plaintiff's choice of forum. *In re Volkswagen*, 371 F.3d 203; *In re Horseshoe Entm't*, 227 F.3d at 434; *United Nat'l*, 2007 WL 3001668, at *2. The public interest factors consist of: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; (4) the avoidance of unnecessary problems of conflict of laws; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *In re Volkswagen*, 371

F.3d at 203; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S.Ct. 252 (1981); *United Nat'l*,
2007 WL 3001668, at *2-3. The weight of each factor greatly depends on the case. *United Nat'l*,
2007 WL 3001668, at *3.

### 2. Cox Has Failed to Meet the Requisites for a §1404(a) Transfer.

#### a. The private factors weigh against transfer.

The first private factor, relative ease of access of proof, weighs in favor of venue in Houston
as opposed to Louisiana. There are no sources of proof in Louisiana as the pollution has been
cleaned up. Sources of proof are in Texas. This is a contractual dispute over the terms and
conditions of insurance policies. The two policies at issue were underwritten, negotiated, placed,
and delivered in Houston through J.H. Blades. *See Exhibit E* ¶¶ 4, 12, 13. J.H. Blades (the
Underwriter) is located in Houston, as are its underwriting files. Cox gave notice of its claim to J.H.
Blades in Houston and following, St. Paul's handling of Cox's claims also occurred in Houston. *See
id.*, ¶16; *see also Exhibit C*, ¶5. Additionally, the claims file containing Cox's claims submissions
are located in Houston. *Exhibit C*, ¶5. Likewise, Cox's current Broker of Record, Technical Risks,
is located in Houston and Technical Risks has handled this claim for Cox since January of 2006.
*Exhibit E*, ¶15. Next, Cox's headquarters and its corporate representatives, including its Manager,
Brad Cox, and Financial Controller, Lora Bolger, are located in Dallas, Texas, and not the Eastern
District of Louisiana. *See Cox's Motion at Exhibits A & B.* While the insured *res* itself is located
in Louisiana, as discussed below Cox has not identified any specific witnesses in Louisiana who
may have sources of proof. Accordingly, this factor weighs against transfer.

The next private factor for the Court's consideration is the convenience of the witnesses.
While the convenience of witnesses, which subsumes the availability of compulsory process and
cost of obtaining witness factors, is often cited as the most important factor under the §1404(a)

transfer analysis,[14] it is a requirement that the movant for transfer "must specifically identify key witnesses and outline the substance of their testimony." *United Nat'l*, 2007 WL 3001668, at *4; *Tellis Software*, 2007 WL 2314316, at *7; *Dupre*, 810 F.Supp. at 825. Cox has not identified a single key witness, or the substance of their testimony, in its motion to transfer. *See Cox's Motion* at pp.12-13 (omitting entirely this requirement as part of its one paragraph discussion of the private interest factors).

In contrast, St. Paul can identify at this time at least the following key witnesses and their locations:

(1)   Paul Zatopek- St. Paul Senior Claims Representative, Houston, Texas (in charge of responding to Cox's insurance claim);

(2)   George F. Howard of J.H. Blades, Houston, Texas (J.H. Blades), Lead Underwriter on the policies in question;

(3)   Rob Morrell of J.H. Blades, in Houston, Texas (J.H. Blades), Deputy Underwriter on the policies in question;

(4)   Susan Fontaine, Technical Risks, Houston, Texas (Cox's Broker of Record handling Cox's claim under the Policies since January 3, 2006);

(5)   Employees of EnRisk, Fort Worth, Texas (Cox's Broker of Record which negotiated the Policies with J.H. Blades);

(6)   Brad Cox, Dallas, Texas (Cox's current Manager); and

(7)   Lora Bolger, Dallas, Texas (Cox's Financial Controller).

*See e.g. Exhibits C & E* (referencing witnesses 1-4); *Cox's Motion at Exhibits A & B* (establishing relevance and locations of witnesses 5 & 6). More than half of the foregoing witnesses are located

---

[14]   *See e.g.*, *Tellis Software*, 2007 WL 2314316, at *7 (*citing Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 825 (S.D. Tex. 1993)).

Page 26 of 30

within this district, with the remainder located in the Northern District of Texas. Therefore, the convenience of the witnesses factors weigh against transfer.

Cox did not address the "catch-all" factor– all other practical problems that make trial of a case easy, expeditious and inexpensive– in its Motion. Under this factor courts have considered such issues as whether all necessary parties can be joined in the current venue. *United Nat'l*, 2007 WL 3001668, at *5. This issue, however, is not present in this case and Cox has failed to allege any facts that would fall under this factor. Accordingly, Cox has failed to show this factor weighs in favor of transfer.

Finally, St. Paul's choice of forum is a factor that is to be considered and is entitled to deference. *In re Volkswagen of America*, 2007 WL 3088142, at *7 (5th Cir. Oct. 24, 2007). St. Paul initiated this Declaratory Judgment action in the Southern District of Texas and Cox represented itself as a Texas Company. Accordingly, this factor also weighs against venue transfer.

In summary, Cox has failed to meet its burden of showing that the public interest factors weigh heavily in favor of venue transfer to the Eastern District of Louisiana. Cox did not identify any specific witnesses, or provide a summary of their testimony, and failed to address the catch-all factor altogether. Cox's motion to transfer should further be denied as St. Paul has shown that each of the public interest factors weigh heavily in favor of venue in Houston, not Louisiana.

### b.    The public factors weigh against transfer.

Cox's motion to transfer should also be denied as it has failed to show that the public factors weigh heavily in favor of transfer as well.

The first public factor for consideration, which was not addressed by Cox, is the administrative difficulties from court congestion. *See United Nat'l*, 2007 WL 3001668, at *5; *Tellis Software*, 2007 WL 2314316, at *8. A review of the Judicial Caseload Profile reports for both the

Southern District of Texas and the Eastern District of Louisiana indicate a disparity between the two jurisdictions in the time between filing and disposition of an average civil case. In 2006, in the Southern District this time period was 8.6 months, which was 26th best amongst U.S. district courts. *See* FED. COURT MGMT. STATISTICS, JUDICIAL CASELOAD PROFILE: DISTRICT COURTS (2006), http://www.uscourts.gov/cgi-bin/cmsd2006.pl. In comparison, this time period in the Eastern District of Louisiana was 11.6, 71st among U.S. district courts. *Id.* Therefore, consideration of this factor weighs in favor of venue in Houston.

The second factor, the local interest in having localized controversies decided at home, also weighs in favor of venue in Texas. This is a coverage dispute on a Texas contract involving a Texas assured (Cox identified itself as a Texas company on its application, and its principal place of business is in Texas) and two policies that were underwritten, negotiated, placed, issued, and delivered in Texas. In this regard, Cox confuses the public issue for consideration under this factor by alleging that the interest lies with Louisiana in having Hurricane Katrina pollution cleaned. *See Cox's Motion* at p. 13. However, the issue for this court to consider is not whether the alleged pollution should be cleaned (which it has been already cleaned and paid for by St. Paul). Rather, the dispute before this court is whether coverage exists under these Texas contract-policies for the damages claimed by Cox. Since the parties' coverage dispute involves a Texas assured and Texas policies, this factor weighs in favor of venue in Texas. *See Williams v. Brown's Dairy*, 2003 WL 21634951, at *3 (5th Cir. July 3, 2003) (noting, "Texas has a compelling interest in regulating insurance policies contracted for in Texas and issued to companies doing business in Texas").

The third public interest factor, familiarity of the forum with the law that will govern the case, likewise weighs in favor of venue in Texas. Texas law will apply to the parties' claims, regardless of where this case is heard, *see* §II(B), *infra*, and "the differences between Louisiana law

and Texas law are real and significant." *The Rice Company (Suisse) S.A. v. James J. Flanagan Shipping Corp.*, 2006 WL 298194, at \*3 (S.D. Tex. Oct. 16, 2006) (Miller, J.).  Texas judges have more expertise in interpreting Texas law than do Louisiana judges,[15] therefore, this factor also weighs in favor of venue in Texas.

The final two public factors are  the avoidance of unnecessary problems of conflicts of laws and the unfairness of burdening citizens in an unrelated forum with jury duty.  Conflicts of laws is not an issue here as it is clear that Texas law will govern this case, whether it is heard in Texas or Louisiana.  Therefore, this factor weighs against transfer.  Similarly, it will not be an unfair burden on Texas citizens to hear this case.  "It is not unreasonable to expect a Texas jury to make determinations as to a contract governed by Texas law..." *United Nat'l,* 2007 WL 3001668, at \*7. The law is clear that this insurance policy will be decided under Texas law (leaving no conflict of law issue)  and it is not unreasonable to expect a Texas jury to make determinations on a Texas insurance contract.  Again these factors weigh in favor of Houston as the more convenient venue.

Considering all of the public interest factors, Cox has failed to meet its burden that these factors weigh in favor of transfer away from Houston.  Accordingly, Cox's Motion to transfer should be denied.

### III.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff St. Paul Insurance Surplus Lines Insurance Company prays that Defendant's Motion to Dismiss or in the Alternative Transfer Venue be denied. St. Paul further requests that it have any and all such other and further relief to which it may be justly entitled to receive.

---

[15]    *See e.g. id.*

Respectfully submitted,

**WESTMORELAND HALL, P.C.**

By:    _Wendy Blanchard Hall_

Wendy Blanchard Hall
State Bar No. 24011522
Federal Bar No. 24096
Erik D. Garza
State Bar No. 24028523
Federal Bar No. 26981
2800 Post Oak Boulevard, 64th Floor
Houston, Texas 77056
Telephone: (713) 871-9000
Telecopier: (713) 871-8962

**ATTORNEYS FOR PLAINTIFF,
ST. PAUL SURPLUS LINES
INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing *Response to Defendant's Motion to Dismiss or in the Alternative Transfer Venue* has been served upon all counsel of record on this 12th day of November, 2007.

William A. Sherwood                    *Via CM/ECF*
GORDON, ARATA, MCCOLLAM
    DUPLANTIS & EAGAN, L.L.C.
2200 West Loop South, Suite 1050
Houston, Texas 77027-3532

Steven W. Copley                       *Via CM/RRR*
C. Peck Hayne, Jr.
GORDON, ARATA, MCCOLLAM,
    DUPLANTIS & EAGAN, L.L.C.
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000

_Wendy Blanchard Hall_

of WESTMORELAND HALL, P.C.