UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ST. PAUL SURPLUS LINES INS. CO., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-2724 |
| | § | |
| COX OPERATING, LLC, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Cox Operating, LLC's ("Cox") motion to dismiss, or in the alternative, transfer venue (Dkt. 12) and plaintiff St. Paul Surplus Lines Insurance Co.'s ("St. Paul") motion for leave to file a sur-response in opposition to defendant's motion to dismiss (Dkt. 26). The court has reviewed all of the parties' pleadings, the submitted evidence, and the applicable law. For the further explained reasons, Cox's motion to dismiss or alternatively transfer is DENIED. Consequently, St. Paul's motion to file a sur-response is DENIED as moot.

## BACKGROUND

St. Paul is a licensed Texas surplus lines carrier incorporated in Delaware. Cox is a Louisiana limited liability company with offices in St. Tammany Parish, Louisiana and Dallas, Texas. St. Paul, through its broker located in Houston, Texas, issued a general liability insurance policy and an excess insurance policy to Cox. St. Paul's broker had been contacted by Cox's broker, who was located in Dallas, Texas, on behalf of Cox's contractor-operator at its Louisiana oil and gas property. On August 29, 2005, Hurricane Katrina devastated southeastern Louisiana, causing severe damage to many of Cox's wells and facilities. During the nearly two years that followed, Cox submitted over $15 million in claims to St. Paul, seeking reimbursement for what Cox claimed were

covered pollution cleanup costs. Prior to August 23, 2007, St. Paul reimbursed $1 million under the general liability policy, the policy's per occurrence limit, and $374,608.43 under the excess policy, which had a $20 million aggregate policy limit. On August 23, 2007, after informing Cox that St. Paul would only reimburse $98,622.87 of the approximately $13 million in outstanding claims, St. Paul filed a declaratory judgment action with this court ("Declaratory Action"), seeking a delcaration that Cox's outstanding claims are not pollution cleanup costs covered by the excess insurance policy. Subsequently, Cox filed a separate action, claiming breach of contract and other statutory damages, in the Eastern District of Louisiana on August 27, 2007 ("Coercive Action"). Summons for Cox was issued in the Declaratory Action on August 29, 2007. Cox was thereafter served on September 4, 2007.

## DECLARATORY JUDGMENT ACT AND JURISDICTION

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (1994). The United States Supreme Court has repeatedly characterized the Declaratory Judgment Act as an "enabling" statute only, "confer[ing] a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (quoting *PSC v. Wycoff Co.*, 344 U.S. 237, 241 (1952)) (internal quotation marks omitted). Therefore, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* (quoting *Wycoff*, 344 U.S. at 241).

2

Insurance coverage disputes are often resolved in an action for declaratory judgment. *Harris v. United States Fidelity & Guaranty Co.*, 569 F.2d 850, 852 (5th Cir. 1978). However, section 2201 is a procedural provision only extending to controversies within the jurisdiction of the federal courts. *Gaar v. Quirk*, 86 F.3d 451, 453-54 (5th Cir. 1996); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1176-77 (5th Cir. 1984). As such, federal courts may not entertain declaratory judgment actions unless there is an independent basis for subject matter jurisdiction. *Lowe*, 723 F.2d at 1177. As the present case is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332, the jurisdictional requirements are satisfied, and St. Paul's request for declaratory relief is properly before this court.

### DISCRETION UNDER THE DECLARATORY JUDGMENT ACT

#### Standard of Review

The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). Although the permissive "may" in Section 2201(a) gives the district court broader discretion to decline to hear a declaratory judgment action than it has in other kinds of actions, the district court's discretion is not wholly unfettered. *See Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001); *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994); *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993). To determine whether to decide or to dismiss a federal declaratory judgment action, a district court "must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895

(5th Cir. 2000)).  Here, the first two prongs are not in issue.  Only prong three, whether this court should exercise its discretion to decide or dismiss the Declaratory Action, is contested.

In *St. Paul Ins. Co. v. Trejo*, the Fifth Circuit outlined seven nonexclusive factors that a district court must consider when deciding whether to exercise its discretion under the Declaratory Judgment Act: (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *Trejo*, 39 F.3d at 590.

Because the parallel Coercive Action is in federal court, nonexclusive factors one, five,[1] and seven are not in issue.

***Was St. Paul's Declaratory Action Filed in Anticipation of Cox's Coercive Action?***

Cox urges the court that St. Paul filed the Declaratory Action in anticipation of Cox's Coercive Action. Dkt. 12.  Although the parties hotly contest the contention, it is logical to conclude that anticipation played an important role in St. Paul's filing its Declaratory Action.[2]  Notably,

---

[1] The import of potential witness' locations will be discussed under the sixth factor.

[2] Under the insurance policies, Cox stood to lose its right to sue after August 29, 2007. Dkt. 12.  Six days prior to that date, St. Paul filed this declaratory action.  Perhaps, had St. Paul not anticipated Cox's intent to sue, St. Paul stood to gain more by waiting until after August 29 to file its suit.  On August 23, it was clear that St. Paul was not going to reimburse approximately $13 million of Cox's submitted claims.  It is reasonable to assume, therefore, that St. Paul anticipated that Cox would bring suit before the August 29 time bar.

4

however, "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of [impending] litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *Sherwin-Williams Co.*, 343 F.3d at 391.

Cox alleges that St. Paul's anticipatory filing was improper. Cox argues that St. Paul intentionally misled it about the potential for the parties to enter into a tolling agreement. The undisputed facts reveal that on August 13, 2007, Cox sent St. Paul a draft tolling agreement. On August 14, 2007, the parties held a phone conference to discuss the tolling agreement. On August 23, 2007, at approximately 8:00 A.M., the parties held another phone conference and mainly discussed Cox's outstanding claims. At some point during the conference, the parties briefly discussed the tolling agreement. During that discussion, Cox's representative advised St. Paul's attorney to contact Cox's attorneys for further discussions regarding the agreement.[3] On the same day, at approximately 8:30 A.M., St. Paul's attorney left a message for Cox's attorneys regarding the tolling agreement. Finally, later that day, at 11:58 A.M., St. Paul filed this declaratory action.

Cox refers this court to *Amerada Petroleum Corp. v. Marshall*, where the Fifth Circuit court held that the district court's granting defendant's motion to dismiss a first-filed declaratory action filed in a federal district court in Texas was not an abuse of discretion because there the plaintiff had

---

[3] Cox contends that St. Paul's attorney, during the August 23, 2007, phone conference, represented that she saw no problem with executing a tolling agreement and merely had a few changes to propose. Dkt. 25, Ex. A. Cox alleges that at that conference, St. Paul urged Cox to be patient and to continue to submit any available documentation. Cox further claims that St. Paul's attorney, in accordance with the above mentioned instruction, left a voice message for Cox's attorneys indicating that "she had some changes for revising and finalizing [the tolling agreement]." *Id.* at Ex. D.

St. Paul vehemently denies the allegations. St. Paul claims that the August 23, 2007, phone conference was held for the purpose of informing Cox that St. Paul had finished reviewing all of Cox's outstanding claims and concluded that only $98,622.87 would be reimbursed. St. Paul admits advising Cox that it should submit any additional documentation regarding the claims but claims doing so only because it always welcomed additional information submitted by assureds. St. Paul claims that Cox representatives initially discussed the tolling agreement, but when St. Paul's attorney began to explain St. Paul's reasons not to enter into the agreement, Cox's representative angrily instructed her to contact Cox's attorneys because he was not interested in discussing the matter any more. Finally, St. Paul's attorney concedes leaving a message for Cox's attorneys but claims that the message was merely to arrange a discussion regarding why St. Paul was not interested in entering into the agreement.

apparently filed suit in anticipation of being sued in the second-filed federal court. *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661 (5th Cir. 1967). In *Amerada Petroleum Corp.*, the defendant had sued other parties in a district in which the plaintiff was not amenable to service of process. The defendant then wrote a letter to the plaintiff stating that if the plaintiff did not submit voluntarily to jurisdiction, defendant would commence another suit in a district having jurisdiction. Consequently, the plaintiff filed a declaratory judgment action. The Fifth Circuit held:

> There is sufficient evidence to support the judge's finding that the instant action was filed by Amerada as the immediate result of the letter inviting it to appear in the District of Columbia. . . . That Amerada's petition for declaratory judgment apparently was in anticipation of the New York suit is an equitable consideration which the district court was entitled to take into account.

*Amerada Petroleum Corp.*, 381 F.2d at 663.

Cox urges that the circumstances at hand are similar to those in *Amerada*. Given that the Fifth Circuit affirmed the district court's dismissal of the declaratory judgment action, allowing the parties to solely proceed in a later filed federal court action, Cox moves this court to dismiss this first-filed declaratory action and allow the parties to proceed in the later filed Coercive Action. However, in *Amerada*, the Fifth Circuit noted the lower court's finding that New York, the second-filed venue, was the appropriate forum—"it was the site of the execution of the contract, the work performed under the contract, [and] the Coronada's principal place of business"—and that Texas was not—"Texas has no connection with the controversy other than as the residence of Mrs. Marshall, who is willing to make herself available for deposition and discovery in New York." *Id.* Given that conclusion, the evidence was deemed to show a greater likelihood of anticipatory filing aimed at forum shopping. Therefore, the *Amerada* court chose not to exercise its discretion over the first-filed declaratory judgment action and dismissed. For reasons further explained, Texas is an appropriate

forum for litigating the claims in issue.[4]  Moreover, it is without question that the parties never entered into a tolling agreement.  Finally, the court does not find that any improprieties were committed by St. Paul.[5]

### *Was St. Paul's Declaratory Action a Part of a Forum Shopping Scheme?*

Given the likelihood that St. Paul's policies were negotiated, placed, underwritten, and delivered in Texas, there is little indicia of an improper forum shopping scheme.[6]  Moreover, as alleged by St. Paul, Cox's current Katrina pollution cleanup claims handler is located in Houston, and Cox's representatives have recently traveled to Houston to negotiate with St. Paul.  Given these facts, the Southern District of Texas is an appropriate forum for this suit.

### *Is it Inequitable to Allow St. Paul to Gain Precedence in Time or to Change Forums?*

In *Mission Ins. Co. v. Puritan Fashions Corp.*, the Fifth Circuit considered whether it was inequitable to allow the declaratory action plaintiff to change the forum given that the forum of the declaratory action had different legal standards than the competing forum. *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983)  There, plaintiff brought a declaratory judgment action in Texas federal court before the defendant could file suit in California state court.  The Fifth Circuit upheld the district court's dismissal of the declaratory judgment action, citing the

---

[4] The most contested issue is whether the policies were negotiated, placed, underwritten, and delivered in Houston.  It is clear, nevertheless, that they were negotiated, placed, underwritten, and delivered in Texas.  Because Cox has an office in Dallas and its broker worked out of Dallas, Cox contends that St. Paul's broker's location, in Houston, is not the place where the policy was generated.  In reply, St. Paul argues that Houston is that place.  After all, Cox knew St. Paul's broker and underwriter were in Houston, the policies were issued out of Houston, and premiums were paid to the Houston broker.  It is not clear specifically where in Texas the policies were generated, but it appears that they were generated in Houston.

[5] Cox urges that the fact that St. Paul did not affect service until after August 29, the date on which Cox's claims would become time barred under the insurance policies, is indicative of this scheme to mislead.  Because under the Federal Rules of Civil Procedure St. Paul had 120 days to perfect service and St. Paul served Cox twelve days after suit was filed, the court disagrees.

[6] *See supra* notes 4-5.

pending parallel California case and "the inequity of permitting [the declaratory judgment plaintiff] to gain precedence in time and forum by its conduct." *Id.* at 602. Because California and Texas had different choice of law rules, the difference in forum changed the law that applied. The substantive provisions of California and Texas law differed significantly. *Id.* at 602 n. 3. The *Mission Insurance Co.* court concluded that the declaratory judgment plaintiff used the federal declaratory judgment statute and the defendant's inability to file an earlier state court suit for the sole purpose of controlling the state law that would apply. *Id.* at 602.

Here, however, Cox does not claim that Texas and Louisiana law is different. On the contrary, Cox contends that the law is the same. Dkt. 25. Given that the policies were generated in Texas, Texas law will guide any court in its interpretation of the excess policy. *See* TEX. INS. CODE ANN. § 21.42. It is not inequitable, therefore, for the Southern District of Texas to interpret the insurance policy terms.[7]

### *Are the Purposes of Judicial Economy Well Served?*

Cox argues that the Eastern District of Louisiana is the most judicially economical venue because it is close to the pollution incidents in issue. Dkt. 25. Cox claims that numerous witnesses, having first-hand knowledge of Cox's pollution cleanup efforts, are in Louisiana. In response, St. Paul urges that the Southern District of Texas is the most judicially economical venue because (1) the policies were underwritten, negotiated, placed, and delivered in Houston; (2) the underwriting files are located in Houston; (3) the claims files containing Cox's claims submissions are located in Houston; (4) Cox's current broker of record, who has handled the claims in issue for Cox since

---

[7] Cox argues that because it had brought additional claims under Louisiana's *sui generis* insurance statutes, litigating in Texas would require Texas courts to interpret Louisiana law. But Texas, itself, has similar statutory provisions, and it is not briefed how differently the courts have interpreted the similar provisions.

8

January 2006, is located in Houston; (5) Cox's headquarters and its corporate representatives—manager Brad Cox and financial controller Lora Bolger—are located in Dallas; and (6) numerous key witnesses St. Paul plans to depose are located either in Houston or Dallas.

It is not clear how witnesses with first-hand knowledge of Cox's pollution cleanup efforts will assist this court in deciding the ultimate issue of what claims are covered by the pollution cleanup provisions in the excess insurance policy. Moreover, given that Texas law is likely to control, it is wise for this court to decide the Declaratory Action because it is presumed to have greater expertise that the Louisiana court in interpreting Texas law.

## Conclusion

For the foregoing reasons, the court will exercise its discretion under the Declaratory Judgment Act to decide the Declaratory Action.

## VENUE

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Furthermore, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(b). "A transfer of venue may be made upon the motion of any party or by the court *sua sponte*." *Empty Barge Lines II, Inc. v. Dredge Leonard Fisher*, 441 F. Supp. 2d 786, 789 (E.D. Tex. 2006) (citing *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989); *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987); *Republic of Bol. v. Philip Morris Cos.*, 39 F. Supp. 2d 1008, 1008-09 (S.D. Tex. 1999); 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL

PRACTICE AND PROCEDURE § 3844 (2d ed. 1986)). The transferring court may even effect the transfer if it lacks personal jurisdiction. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (28 U.S.C. § 1406(a) is "amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not"). *Accord Cote v. Wadel*, 796 F.2d 981, 984-85 (7th Cir. 1986); *Drayton Enterprises, L.L.C. v. Dunker*, 142 F. Supp. 2d 1177 (D.N.D. 2001). In assessing whether a different forum is more appropriate, the court analyzes several public and private interest factors, none of which are given dispositive weight. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir 2004). "The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). "The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

The private concerns are a near draw. As previously discussed, Cox claims that its witnesses are all in Louisiana. St. Paul, on the other hand, points to key witnesses located in Houston and Dallas. Dkt. 19. St. Paul also points to various pertinent documents that are located in Houston.

The public concerns are in favor of retaining the case in Texas. St. Paul submits anecdotal evidence that Louisiana courts are more congested. St. Paul also urges that Texas has the greatest interest in the action because it concerns insurance policies issued in Texas. Cox, on the other hand,

argues that Louisiana has the greater interest because the action concerns pollution cleanup in Louisiana. That, however, is outweighed by the fact that Texas law will likely control. Therefore, given that Texas courts are presumed to be more familiar with the law that will govern the case, the public concerns weigh in favor of Texas as the proper venue.[8]

## CONCLUSION

For the foregoing reasons, Cox's motion to dismiss or alternatively to transfer is DENIED. Further, St. Paul's motion to file a sur-response is DENIED as moot.

Signed at Houston, Texas on December 6, 2007.

_____
Gray H. Miller
United States District Judge

---

[8] Notably, the Fifth Circuit "conceive[s] . . . no reason why the standard of review for discretionary dismissal under the Declaratory Judgment Act and dismissals under *forum non conveniens* should vary." *Mission Ins. Co.*, 706 F.2d at 601 n.2.