IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| COX OPERATING, L.L.C., § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. H-07-2724 |
| v. § | (Consolidated with |
| § | CIVIL ACTION NO. H-08-1382) |
| ST. PAUL SURPLUS LINES § | |
| INSURANCE COMPANY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Cox Operating, LLC's ("Cox") Motion for Partial Summary Judgment (Doc. 294).[2]  The court has considered the motion, all relevant filings, and the applicable law and **RECOMMENDS** that Cox's motion be **DENIED**.

**I.  Case Background**

This insurance case centers on the obligation of St. Paul, the issuer of primary and umbrella excess insurance policies[3] covering oil and gas commercial general liability, to pay Cox's loss claims related to pollution cleanup following Hurricane Katrina.  The factual history and procedural history is recounted many times in the record.  The factual account here is derived from the testimony

---

[1]   This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Docket Entry No. 75.

[2]   Also pending are three motions filed by St. Paul Surplus Lines Insurance Company's ("St. Paul").  The court addresses these remaining motions in separate memoranda.

[3]   To the extent necessary in this opinion, the court refers to the policies individually as "Primary Policy" and "Excess Policy."

of Timothy L. Morrison ("Morrison"), who was employed in operations at Cox.[4]

Cox has operated multiple oil and gas production facilities in the Gulf of Mexico off the coast of Louisiana, including one in Eloi Bay and one in Quarantine Bay.[5] From 2004 through November 2005, Cox contracted with Brammer Engineering to manage operations and pollution cleanup.[6] Prior to Hurricane Katrina, the Eloi Bay and Quarantine Bay facilities had production platforms, as well as gas lift headers and wells.[7]

Hurricane Katrina struck the coast of Louisiana in August 2005 and caused incredible destruction to Cox's Eloi Bay and Quarantine Bay fields.[8] In Morrison's words:

> Hurricane Katrina wreaked havoc on the Cox facilities, destroying or damaging all owned and operated oil and gas facilities. The destruction of the platforms and facilities as a result of Hurricane Katrina left production equipment and engines scattered in the [Eloi Bay] and [Quarantine Bay] fields. Platforms, built on creosote pilings to keep them out of the water, were reduced to rubble, causing production equipment and vessels to fall into the water. After Katrina, concrete and piping from the platform structures was [sic] often

---

[4] See Docs. 285-87, Morrison's Decl. Morrison's declaration is unclear about his employment history with Cox. According to his testimony, he was hired in August 2005 and became operations manager in October 2006. Doc. 285, Morrison's Decl., ¶ 5. In the declaration, he also referred to himself as vice president of operations but provided no date for that promotion. See id. at ¶ 7. Morrison worked for Cox until November 2010. Id. at ¶ 5.

[5]   Doc. 285, Morrison's Decl., ¶ 8.

[6]   Id. at ¶ 10.

[7]   Id. at ¶¶ 12, 13.

[8]   Id. at ¶¶ 5, 14.

> mangled and on top of fallen production equipment. Some vessels were picked up and thrown into areas of the bay away from the platforms. . . . The fields were inundated with oil sheening [sic] from the displaced production equipment and engines.[9]

The oil and gas production equipment contained varying levels of hydrocarbons.[10]

The response plan involved pollution clean up, remediation, and reconstruction.[11] Implementation was hindered by the lack of power, high inland water, the lack of telephone service, road blocks, and labor relocation.[12] The devastation resulted in delays of every sort, from acquiring supplies and labor to transporting equipment.[13] Morrison assisted in facilitating the response efforts.[14]

The debris in the oil fields increased the difficulty of mitigating and removing sources of pollution.[15] "The debris fields . . . were multi-layered with the cement slabs on top of the hydrocarbon-leaking production equipment."[16] Cox addressed the numerous oil spills by "cleaning up the major spills first and

---

[9] Id. at ¶ 14.

[10] See id. at ¶¶ 15, 17.

[11] See id. at ¶ 18.

[12] Id.

[13] See id.

[14] Id. at ¶ 19.

[15] Id. at ¶ 23.

[16] Id.

containing the smaller oil spills to address in the future."[17] To halt the leakage of pollutants, Cox needed to retrieve leaking production equipment, which was spread out over a radius of up to a mile.[18]

Cox hired professional environmental clean-up crews to clean up, prevent, report, and mitigate oil spills.[19] Under their supervision, Cox employees and contracted workers deployed containment booms to surround and contain known or potential spills and utilized absorbent booms, absorbent pads, and oil dry to clean up the spill.[20] The same materials and techniques were used when retrieving production equipment due to the potential for a leak.[21] Disposal of the clean-up materials required several steps to prevent environmental damage.[22]

Placement of retrieved production equipment into shale barges prevented leaking pollutants from reaching the water.[23] Cox and its contractors used john boats exclusively to deploy, maintain, and pick up booms.[24] Cox employed contractors to scan the Cox fields

---

[17] Id. at ¶ 25.

[18] Id. at ¶ 26.

[19] Id. at ¶ 39.

[20] Id. at ¶ 37; see also id. at ¶ 39.

[21] Id. at ¶ 37.

[22] Id. at ¶ 40.

[23] Id. at ¶ 42.

[24] Id. at ¶ 43.

with sonar technology in order to locate missing production vessels, to check cleaned vessels for all flammable materials before scrapping, to fly over the Cox fields to discover and monitor sheens, and to transport clean-up laborers by air.[25] Other services, equipment, and materials that were utilized, at least in part, for cleanup included tug boats, labor, living quarters and necessities, fuel, crew boats, and tools.[26]

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).

## III. Analysis

According to its motion, Cox makes two broad requests for summary judgment. In the first, Cox asserts that a variety of

---

[25] Id. at ¶¶ 44-46.

[26] Id. at ¶¶ 47-48.

matters are not subject to any genuine dispute, and, thus, it is entitled to judgment as a matter of law.  In the second, Cox refers generally to Morrison's declaration and the attached exhibits and contends that it is entitled to payment for each claimed item, along with penalty interest, attorneys' fees, and pre-judgment interest, and that St. Paul is not entitled to recoup any amount previously paid to Cox.

Beginning with the former request that certain issues be established as a matter of law, Cox lists ten facts[27] that do not appear to be in dispute but relate to basic background information. For example, Cox seeks a court judgment finding that it "has been the operator of certain oil and gas production facilities located off the coast of the State of Louisiana in the Gulf of Mexico since 2004 to the present," that "St. Paul provided insurance coverage to Cox with respect to Cox's [f]acilities for pollution clean-up costs up to a $1,000,000 per incident limit of liability under an insurance policy with a policy period from June 1, 2005[,] to June 1, 2006," and that "St. Paul provided an additional layer of insurance coverage to Cox over the Primary Policy with respect to Cox's [f]acilities for pollution clean-up costs up to a $20,000,000 per incident limit of liability under an insurance policy also with

---

[27]   Doc. 294, Cox's Mot. for Partial Summ. J., pp. 2-4.  In its brief in support, Cox adds lengthy quotes from the insurance policies.  See Doc. 297, Brief in Support of Cox's Mot. for Partial Summ. J., pp. 3-11.

a policy period from June 1, 2005[,] to June 1, 2006."[28] Establishing these facts and the other eight requested by Cox in no way advances this case because none of the facts will be issues that will need to be resolved by trial. The parties can stipulate to these facts and so identify them in their joint pretrial order. Cox's request as to these facts is not a proper use of the summary judgment tool.

The remaining six "facts" as to which Cox seeks the court's judgment are ultimate issues in the case. Cox asks the court to find as a matter of law that: 1) each of the items of expense listed in Morrison's declaration and attached exhibits falls within the coverage of the St. Paul policies; 2) none of those items is excluded by the policies; 3) Cox has substantially complied with all material conditions precedent to St. Paul's payment obligation; 4) St. Paul has waived Cox's compliance obligation as to items already paid; 5) St. Paul has waived Cox's compliance obligation as to items for which St. Paul denied coverage; and 6) St. Paul has not been prejudiced by any failure of Cox to comply or any delay in compliance with any material condition precedent.[29] Rather than taking each of these issues and separately pointing the court to facts and law entitling it to summary judgment as is required by Federal Rule of Civil Procedure ("Rule") 56, Cox includes page

---

[28]   Doc. 294, Cox's Mot. for Partial Summ. J., p. 2.

[29]   Id. at pp. 4-5.

after page of legal standards (e.g., the summary judgment standard, special pleading requirements, burdens of proof in insurance cases, and substantial compliance with conditions precedent) without any analysis applying the cited law to this case.[30]  As its motion and brief lack any analysis, Cox has failed to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law on any of the above issues.

The only portion of Cox's brief devoted to any analysis concerns its obligations under federal and state laws to clean up the pollution resulting from Hurricane Katrina.  Although Cox does not explicitly articulate its point for establishing that it was legally required to incur clean-up costs, it appears by way of its quotation of the Excess Policy language that Cox contends the Excess Policy covers all expenses incurred complying with federal and state laws.  As discussed in another memoranda issued on this

---

[30] For example, Cox does not mention any exclusion that St. Paul contends applies until the conclusion section of the brief, where it dismisses each summarily:

1. The "Control of Property" exclusion has no application on its face;

2. The "Pollution clean-up costs for underground pollutants" exclusion is not remotely factually applicable, as none of the Resulting Pollution was underground; and

3. Under its express wording, the "Pollution work loss, cost, or expense" exclusion is not applicable to the material "Pollution clean-up cost liability" insuring agreement of the Excess Policy[.]

Doc. 297, Brief in Support of Cox's Mot. for Partial Summ. J., p. 36.  In its reply, Cox repeats these three statements, again without analysis.  See Doc. 328, Cox's Reply to St. Paul's Resp. to Cox's Mot. for Partial Summ. J., pp. 35-36.

same date, the condition that the pollution work be legally required is only one of several conditions for coverage. Thus, establishing that Cox was legally required to undertake cleanup falls short of establishing coverage as a matter of law.

Cox's second broad summary judgment request, that it is entitled to payment for each item claimed in Morrison's declaration and exhibits, suffers from several flaws. First, entitlement to payment for the items sought depends on the court finding in Cox's favor on the above-discussed ultimate issues.[31] As Cox fails to demonstrate as a matter of law, inter alia, that the items were covered and not excluded and that Cox substantially complied with the policies' conditions precedent, Cox fails to show that it is entitled to judgment in its favor on each invoiced item.

Additionally, Rule 56(c)(1) requires a movant to cite "to particular parts of materials in the record" that establish the absence of any factual dispute. Cox, however, generally refers the court to Morrison's declaration and the attached exhibits. Morrison's declaration is 137 pages, single-spaced, and his summary

---

[31] With regard to St. Paul's right to recoup payments previously made, Cox twice contends that St. Paul has no right, but offers no supporting argument. The only relevant law in the brief is tucked into Cox's presentation of law concerning conditions precedent to insurance coverage. Cox represents that no appellate court opinion applying Texas law has allowed an insurer to recoup amounts paid or adjustment costs incurred based on the insured's failure to comply with a condition precedent and cites case law for the proposition that only if the insured and insurer agreed can an insurer recover, based on lack of coverage, amounts paid an insured. Doc. 297, Brief in Support of Cox's Mot. for Partial Summ. J., pp. 20-21. Absent argument demonstrating how the cited law applies to the facts of this case, the court cannot determine whether summary judgment on this point is proper.

of the items Cox is claiming is 117 pages.[32] The 24,091-page appendix is divided into two sections: the chronological documentation of daily events at pages 1 to 11,536 ("timeline section"); and 2) the invoices from vendors for services, equipment, and materials at pages 11,537 to 24,091 ("invoice section").[33] In explanation for providing a summary, Morrison stated:

> The invoices in the invoice section of the appendix are so voluminous that they cannot be conveniently examined in Court, as there are over 12,500 pages in that section, and so the date, the identity of the vendor, the invoice number, the amount invoiced, and the reference to the beginning page number of each of the invoices in the appendix are accurately summarized in the spreadsheet charts . . . .[34]

Morrison explained that he reviewed all of the daily logs and invoices and determined whether all or part of each invoice could be attributed to pollution clean up. Morrison admitted that "the daily logs and invoices did not always accurately or completely describe all the work performed on a given day."[35] Morrison's personal knowledge, particularly of Cox's activities at the time of each invoice and of the purpose of the particular services, equipment, and materials, played a role in his categorization of

---

[32]  See Docs. 285-288.

[33]  See Doc. 285, Morrison's Decl., ¶ 33; Doc. 289, Compact Disc.

[34]  Doc. 285, Morrison's Decl., ¶ 33.

[35]  Id. at ¶ 49.

items billed.[36] Morrison's declaration summarizes Cox's activities and the costs incurred chronologically, discussing for each time period the costs of vessels, equipment, labor, field supplies, and other services and materials.

Requesting that the court scour more than 12,000 pages of invoices to determine which costs are covered by the policies is not an appropriate use of summary judgment. It is also not appropriate for the court to rely on a declarant's summary of the evidence and opinions as to the proper categorization. Morrison's testimony should be tested through cross-examination to determine whether his opinions are reasonable interpretations of the invoices.[37]

On that note, the court has repeatedly held in prior memoranda that the jury has the job of evaluating the testimony, reviewing the documentation, and determining, one invoice at a time, whether each asserted cost is covered as pollution work. Morrison's personal knowledge regarding Cox's activities at various points in time will be valuable in assisting the jury in this task. Relying on Morrison's testimony, the jury can assess, not only what tasks

---

[36] See id. at ¶ 52.

[37] In its response, St. Paul challenges two of the invoices, and, in its reply, Cox concedes that St. Paul raised fact issues as to those two. See St. Paul's Resp. to Cox's Mot. for Partial Summ. J., pp. 4-8; Cox's Reply to St. Paul's Resp. to Cox's Mot. for Partial Summ. J., p. 12. Two invoices among 2,216 is not statistically significant, but Cox's concession with regard to those two invoices confirms for the court that each invoice should be addressed individually and Morrison's testimony should be tested.

on what days should be attributed to pollution work, but what percentage of other costs, such as overhead, also is covered by the policy. Although the court can and has interpreted portions of the policies, the categorization of the costs Cox incurred is not a black-and-white matter on which the court can make legal determinations. Rather, reasonable minds could reach more than one conclusion based on the same evidence. Thus, the coverage decisions require the judgment and experience of a jury.

As it is Cox's burden to demonstrate why it is entitled to summary judgment as a matter of law, the court declines to undertake that obligation on Cox's behalf. Cox's motion should be denied for failure to show either that no genuine issues of material fact exist or that it is entitled to judgment as a matter of law.[38] Because summary judgment should not be granted on Cox's claims, Cox's requests for interest and attorneys' fees are premature.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Cox's motion for partial summary judgment be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days

---

[38] As Cox failed to meet its initial burden, the court finds it unnecessary to address St. Paul's responsive arguments. Cox objected to portions of St. Paul's summary judgment evidence. The court **OVERRULES** those objections because the court did not rely on any incompetent evidence in evaluating Cox's motion.

12

from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 21st day of October, 2011.

Nancy K. Johnson
United States Magistrate Judge