```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION
```

| | |
|---|---|
| COX OPERATING, L.L.C., § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. H-07-2724 |
| v. § | (Consolidated with |
| § | CIVIL ACTION NO. H-08-1382) |
| ST. PAUL SURPLUS LINES § | |
| INSURANCE COMPANY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is: 1) Defendant St. Paul Surplus Lines Insurance Company's ("St. Paul") Motion for Partial Summary Judgment on Cox Operating, L.L.C.'s ("Cox") Breach of Cooperation Clause (Doc. 295).[2]  The court has considered the motion, all relevant filings, and the applicable law and **RECOMMENDS** that the motion be **DENIED**.

**I.  Case Background**

This insurance case centers on the obligation of St. Paul to pay Cox's loss claims related to pollution cleanup following Hurricane Katrina.  As repeated multiple times in the documents on the record, St. Paul issued Cox a commercial general liability ("CGL") policy covering oil and gas operations ("Primary Policy")

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Docket Entry No. 75.

[2] The other pending motions are addressed in separate memoranda.

and an umbrella excess policy ("Excess Policy") that both included coverage for pollution cleanup.[3]

Under the broad category of "General Rules,"[4] the policies explained what to do in the case of a loss and included the following mandate:

> If your policy provides property or other first-party protection and there's a loss that may be covered under that protection, you must do all of the following in connection with that loss:
>
> . . . .
>
> 5.   Cooperate with us in the investigation, or any settlement, of the loss.
>
> Allow us, whenever we reasonably require, to:
>
> • inspect property involved in or proving the loss;
>
> • examine, and make copies of, your financial books and records relating the loss; and
>
> • take samples of property, whether damaged or undamaged, for analysis or testing.[5]

---

[3] See Doc. 295-2, Ex. 2 to St. Paul's Mot. for Partial Summ. J. on its Breach of Cooperation Clause ("St. Paul's Cooperation Clause Mot."), Primary Policy, pp. COX 02312, COX 02333; Doc. 295-3, Ex. 3 to St. Paul's Cooperation Clause Mot., Excess Policy, pp. COX 02416, COX 02419; Doc. 295-15, Ex. 15 to St. Paul's Cooperation Clause Mot., Brad Cox's Decl. Dated Nov. 20, 2007, ¶ 7.

[4] See Doc. 295-2, Ex. 2 to St. Paul's Cooperation Clause Mot., Primary Policy, p. COX 02319; Doc. 295-3, Ex. 3 to St. Paul's Cooperation Clause Mot., Excess Policy, p. COX 02406. The policies state, "This form contains various rules that apply to your policy." Doc. 295-2, Ex. 2 to St. Paul's Cooperation Clause Mot., Primary Policy, p. COX 02319; Doc. 295-3, Ex. 3 to St. Paul's Cooperation Clause Mot., Excess Policy, p. COX 02406.

[5] Doc. 295-2, Ex. 2 to St. Paul's Cooperation Clause Mot., Primary Policy, pp. COX 02324-25; Doc. 295-3, Ex. 3 to St. Paul's Cooperation Clause Mot., Excess Policy, pp. COX 02411-12. The policies also required cooperation related to liability protection, committing Cox to assist St. Paul in:

• securing and giving evidence;

During the period covered by the policies, Hurricane Katrina destroyed many of Cox's oil wells, facilities, and equipment.[6] Cox reported the damage to St. Paul, claiming covered losses at Quarantine Bay and Eloi Bay.[7]

In connection with a letter dated July 5, 2006, Cox by way of its designated claim representative Halverson, Hirschfield & Associates, Inc., ("Halverson"), submitted spreadsheets of expenses incurred by Cox "as a result of pollution-related damages" and photographs of Eloi and Quarantine Bay.[8] David Kerr ("Kerr"), an adjuster with Halverson, explained in the letter that the submission was a partial claim as the losses were ongoing and Cox was working to collect information for the remainder of the claim.[9]

---

- attending hearings and trials;
- obtaining the attendance of witnesses; and
- taking other reasonable steps to help us investigate or settle, or defend a person or organization protected under your policy against, a claim or suit.

Doc. 295-2, Ex. 2 to St. Paul's Cooperation Clause Mot., Primary Policy, pp. COX 02325-26; Doc. 295-3, Ex. 3 to St. Paul's Cooperation Clause Mot., Excess Policy, pp. COX 02412-13.  This provision is more relevant to a situation in which Cox is sued by a third party.  Although technically arising under liability coverage for pollution, in practice the claim in this instance was one for reimbursement of costs Cox paid for pollution cleanup.

[6]     See Doc. 295-15, Ex. 15 to St. Paul's Cooperation Clause Mot., Brad Cox's Decl. Dated Nov. 20, 2007, ¶ 11.

[7]     See Doc. 295-15, Ex. 15 to St. Paul's Cooperation Clause Mot., Brad Cox's Decl., ¶ 14.

[8]     Doc. 295-4, Ex. 4 to St. Paul's Cooperation Clause Mot., Letter from David Kerr ("Kerr") to Teri Krause Dated July 5, 2006, pp. 1, 2.

[9]     Id. at p. 2.

According to the letter, the spreadsheets included expenses, such as labor, material, equipment and supervision, related to pollution cleanup and mitigation.[10] The amount requested at that time was $5,329,509.29.[11] The letter promised that supporting invoices were available for review.[12]

In August 2006, Ron Ellis ("Ellis"), assistant vice president for Shuman Consulting Services, LP, ("Shuman"), which was hired by St. Paul to adjust Cox's claim, contacted Kerr to advise him that Ellis was reviewing the claim for Eloi Bay and would want to meet in a couple of weeks.[13] The meeting between Ellis and Kerr occurred on September 6, 2006, and Ellis requested additional information on Cox's claimed losses.[14] Kerr indicated that he would discuss the claims with Cox and inform Ellis as to which expenses Cox agreed were not pollution related.[15]

In November 2006, Ellis spoke with Lora Bolger ("Bolger"), Cox's controller and liaison with Shuman, and Paul Zatopek

---

[10]   Id.

[11]   Id.

[12]   Id.

[13]   See Doc. 295-10, Ex. 10 to St. Paul's Cooperation Clause Mot., Shuman Communication History, p. 3.

[14]   See id. at p. 2; Doc. 295-13, Ex. 13 to St. Paul's Cooperation Clause Mot., Ellis's Aff. Dated June 12, 2009, ¶ 4.

[15]   See Doc. 295-10, Ex. 10 to St. Paul's Cooperation Clause Mot., Shuman Communication History, p. 2.

("Zatopek"), senior claims representative for St. Paul.[16] Bolger promised to provide more support documentation, beginning with Quarantine Bay.[17] In January, Bolger indicated that she was still working on the Quarantine Bay documents and promised them by February 1, 2007.[18] In March 2007, Ellis sent Bolger a letter repeating his request for additional claim support documentation.[19] When Ellis inquired about the documentation in early April 2007, Bolger promised to provide it within the week.[20]

On May 16, 2007, Cox and St. Paul representatives met to discuss coverage.[21] A few days after the May 2007 meeting, St. Paul issued a reservation of rights letter.[22] Therein, St. Paul stated its view that some of the submitted costs would not be covered

---

[16] See id.; Doc. 295-13, Ex. 13 to St. Paul's Cooperation Clause Mot., Ellis's Aff. Dated June 12, 2009, ¶ 4.

[17] See Doc. 295-10, Ex. 10 to St. Paul's Cooperation Clause Mot., Shuman Communication History, p. 2.

[18] See id.; Doc. 295-6, Ex. 6 to St. Paul's Cooperation Clause Mot., Email from Ellis to Zatopek, et al., Dated Jan. 11, 2007.

[19] See Doc. 295-7, Ex. 7 to St. Paul's Cooperation Clause Mot., Letter from Ellis to Bolger Dated Mar. 20, 2007.

[20] See Doc. 295-10, Ex. 10 to St. Paul's Cooperation Clause Mot., Shuman Communication History, p. 2.

[21] Doc. 295-1, Ex. 1 to St. Paul's Cooperation Clause Mot., Zatopek's Aff., ¶ 9.

[22] Doc. 136, Ex. D to Cox's Surreply to St. Paul's Reply to Cox's Resp. to St. Paul's Mot. for Partial Summ. J. on "Pollution Clean-up Costs" Definition, Letter from Paul Zatopek to Brad Cox Dated May 21, 2007.

under the excess policy and indicated that it would continue to investigate the claim under a reservation of rights.[23]

In June 2007, Maria Strickland ("Strickland"), a senior claims administrator for Shuman, submitted a public records request for all documents from the Louisiana Department of Environmental Quality related to the Eloi Bay and Quarantine Bay pollution claims.[24] Strickland also sought documentation from Robert Cannon ("Cannon") of ES&H Consulting & Training Group, which was engaged by Cox to coordinate and oversee oil spill removal operations.[25] Cannon, in turn, contacted Tim Morrison ("Morrison") of Cox via email:

> At this time, I am writing to you to seek permission to forward copies of all of Cox Operating's spill documentation to the Shuman Consulting's office as a way to help Cox Operating to proceed forward with your pollution claim. With your written approval, ES&H Consulting and Training Group will forward to Ms. Strickland copies of the following:
>
> *   ES&H Spill Response Notification Forms
> *   Agency required Written Notifications
> *   National Response Center Incident Reports
> *   Daily Field Tickets of the OSRO Response Crews from ES&H Consulting Services, Inc.
> *   Daily Field Tickets of the Qualified Individuals/Incident Management from ES&H Consulting & Training Group
> *   Copies of the Field Reconstruction Plans
> *   Daily Job Safety & Environmental Analysis Reports

---

[23] See id.

[24] See Doc. 295-10, Ex. 10 to St. Paul's Cooperation Clause Mot., Shuman Communication History, p. 1.

[25] See id.; Doc. 295-12, Ex. 12 to St. Paul's Cooperation Clause Mot., Strickland's Aff. Dated June 12, 2009, ¶¶ 3-6.

>       This is not an unusual request for this type of
> assistance by other ES&H Consulting and Training Group
> retainer clients.  At your earliest convenience, please
> determine how Cox Operating would like our group to
> proceed from here and let our office know.[26]

Morrison forwarded the email to Brad Cox, Cox's manager, asking what he wanted Morrison to tell Cannon.[27] Brad Cox responded that Cox should gather and send the information itself.[28]

Morrison's email response to Cannon was:

> I would ask that you only send to the person requesting
> information that which is fact.  The daily field reports
> although complete in a reporting since [sic] might be
> interpreted different[ly] in an operational since [sic]
> and allow conclusions to be drawn which are contrary to
> the actual operation.  The purpose behind the information
> request is to determine the cost of the response to
> Katrina from a pollution stand point and pay out on an
> insurance claim.  We have been and will continue to be in
> direct contact with the insurance adjustors and they can
> request these items from us upon review and determination
> if additional commentary or explanation should accompany
> the documents.[29]

Morrison also requested that Cannon send copies of the documents to Cox.[30]

In July 2007, Ellis acknowledged the letter of July 5, 2006, (from the prior year) and requested "copies of all itemized invoices and support documentation for the expenses listed on [the]

---

[26]    Doc. 295-17, Ex. 17 to St. Paul's Cooperation Clause Mot., Email from Cannon to Morrison Dated June 12, 2007.

[27]    See id. at Email from Morrison to Brad Cox Dated June 12, 2007.

[28]    See id. at Email from Brad Cox to Morrison Date June 12, 2007.

[29]    Doc. 295-32, Ex. 32 to St. Paul's Cooperation Clause Mot., Email from Morrison to Cannon Dated June 12, 2007.

[30]    Id.

spreadsheet."[31] In early August, Strickland emailed Susan Fontaine ("Fontaine"), Cox's insurance agent, in followup to a telephone conversation.[32] The email stated:

> [W]e still need documentation to support Cox Operating's claim for labor allocation costs for both Eloi Bay and Quarantine Bay. All other invoices have been reviewed by this office and subsequently submitted to Paul Zatopek at St. Paul Travelers for his review, who we understand is out on vacation this week. We anticipate hearing something from Mr. Zatopek[] upon his return from vacation.[33]

By August 8, 2007, Shuman had received additional claim documentation but still sought more documentation for labor allocation.[34] Strickland noted on August 20, 2007, that Shuman had received time sheets for Eloi Bay and Quarantine Bay for 2005-2007.[35]

The parties held a conference call on August 23, 2007, during which time St. Paul notified Cox that St. Paul would only cover an additional $98,622.87.[36] St. Paul sent the check for that amount on the same day.[37] On August 30, 2007, St. Paul's counsel sent a

---

[31] Doc. 295-8, Ex. 8 to St. Paul's Cooperation Clause Mot., Letter from Ellis to Kerr Dated July 25, 2007.

[32] See Doc. 295-9, Ex. 9 to St. Paul's Cooperation Clause Mot., Email from Strickland to Fontaine Dated Aug. 1, 2007.

[33] Id.

[34] See Doc. 295-10, Ex. 10 to St. Paul's Cooperation Clause Mot., Shuman Communication History, p. 1.

[35] See id.

[36] Doc. 295-1, Ex. 1 to St. Paul's Cooperation Clause Mot., Zatopek's Aff., ¶¶ 11-12.

[37] Id. at ¶ 18.

follow-up letter referencing the August 23rd meeting.[38] The letter was intended as a supplementation to St. Paul's May 2007 reservation of rights letter and indicated that the remaining portion of Cox's claim was not covered.[39] It concluded:

> As previously noted, St. Paul has paid all amounts that it believes are owed under the "Pollution Clean Up Costs" section of the Policy. The remaining damages asserted do not constitute pollution clean up costs.
> If Cox has any additional information that it believes is material to the question of coverage, please forward it immediately and St. Paul will consider it.[40]

In June 2008, UHY Advisors submitted a revised restated claim on behalf of Cox.[41] Shuman readjusted the claim after receiving the daily reports and field notes.[42] The readjustment cost St. Paul an additional $145,911.40 in adjusters' fees.[43] Cox claimed nearly $14 million, but St. Paul has reimbursed Cox a total of just over $1.48 million.[44]

---

[38] See Doc. 132-3, Ex. C to St. Paul's Reply to Cox's Resp. to St. Paul's Mot. for Partial Summ. J. on Reporting Requirement Clause, Letter from Wendy Blanchard Hall to Steven W. Copley & C. Peck Hayne, Jr.

[39] See id. at pp. 1, 2.

[40] Id. at p. 5.

[41] See Doc. 295-5, Ex. 5 to St. Paul's Cooperation Clause Mot., Letter from Robert Lang to Wendy Blanchard Hall Dated June 30, 2008.

[42] See Doc. 295-11, Ex. 11 to St. Paul's Cooperation Clause Mot., Strickland's Aff. Dated Feb. 23, 2011, ¶ 5; Doc. 295-13, Ex. 13 to St. Paul's Cooperation Clause Mot., Ellis's Aff. Dated June 12, 2009, ¶ 7. The affidavits do not reflect on what date Shuman received the daily reports and field notes.

[43] Doc. 295-11, Ex. 11 to St. Paul's Cooperation Clause Mot., Strickland's Aff. Dated Feb. 23, 2011, ¶ 5.

[44] See Doc. 1, St. Paul's Original Compl., ¶¶ 16-17, 19, 20.

St. Paul filed this declaratory action in this court on August 23, 2007, seeking a declaration that Cox's outstanding claims are not pollution clean-up costs covered by the excess insurance policy. Cox filed a separate action, claiming breach of contract and other statutory damages, in the Eastern District of Louisiana on August 27, 2007. Five months after denying Cox's motion to dismiss or, alternatively, to transfer venue in December 2007, the court consolidated the later-filed case with this one.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show that the facts are not in dispute, the party opposing summary judgment must go beyond the pleadings and proffer evidence demonstrating that genuine issues of material fact do exist that must be resolved at trial. See Celotex Corp., 477 U.S. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

### III. Analysis

St. Paul moves for summary judgment that Cox breached the insurance policies' cooperation clauses. A breach of contract claim requires proof that: 1) a valid contract exists; 2) one party fully performed its obligations; 3) the other party breached the contract; and 4) the first party was damaged as a result of the

breach.  Aquila S.W. Pipeline, Inc. v. Harmony Exploration, Inc., 48 S.W.3d 225, 235 (Tex. App.–San Antonio 2001, pet. denied).

St. Paul contends that Cox breached the cooperation clauses of the insurance policies by withholding or failing to produce "essential claim documents and information to St. Paul."[45]  Cox responds with six contentions: 1) genuine issues of fact preclude summary judgment; 2) Cox substantially complied by ultimately providing the information sought; 3) St. Paul did not plead noncompliance with any condition precedent; 4) St. Paul waived the cooperation requirement by denying coverage and filing a lawsuit; 5) St. Paul provided no evidence that it was prejudiced by the alleged failure to cooperate; and 6) abatement, rather than denial, is the proper remedy for failure to cooperate.

A ruling in favor of Cox on any of its contentions would preclude summary judgment in favor of St. Paul.  As the court finds that genuine issues of material fact exist as to Cox's compliance with the cooperation clause, St. Paul, as movant, cannot meet its summary judgment burden.  Therefore, the court need not address any of Cox's other arguments opposing partial summary judgment.

The policies do not refer to the cooperation requirement as a condition precedent to coverage or to suit, but do state that Cox *must* take seven steps in connection with a loss.  One of those seven steps is to cooperate with St. Paul in the investigation of

---

[45]   Doc. 295, St. Paul's Cooperation Clause Mot., p. 2.

12

the loss, including allowing St. Paul to examine and make copies of financial books and records relating to the loss. The parties apparently agree that cooperation is a condition precedent under each of the present polices. While there is Texas case law that arguably supports such a finding,[46] the most recent discussion by the Texas Supreme Court suggests otherwise. See PAJ, Inc. v. The Hanover Ins. Co., 243 S.W.3d 630, 636 (Tex. 2008)(finding that a notice-of-claim requirement using "must do" language "more closely resembles a covenant"). The distinction between condition and covenant, however, did not play a significant role in the Texas Supreme Court's analysis in that case, and this court does not find that the distinction alters the decision here.

Most of the cases cited by the parties in support of their arguments involved third-party lawsuits and insureds who failed to cooperate in their own defenses. See Griffin v. Fid. & Cas. Co. of N.Y., 273 F.2d 45 (5th Cir. 1959)(applying Texas law and involving an automobile policy); State Farm Lloyds v. Brown [hereinafter State Farm v. Brown], Civil Action No. 3:08-CV-318-O, 2009 WL 2902511 (N.D. Tex. Sept. 9, 2009)(applying Texas law and involving

---

[46] The Texas Supreme Court labeled a notice-of-suit provision as a "condition precedent to the insurer's liability on the policy" where the policy stated that "[a] person seeking coverage must" promptly send copies of notices or legal papers received in connection with an accident or loss. Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173-74 (Tex. 1995). Five years ago, a Texas court of appeals applied Harwell to a policy that used the same language to impose a duty to cooperate in the investigation, settlement, or defense of a suit and found that the cooperation clause also was a condition precedent. Progressive Cty. Mut. Ins. Co. v. Trevino, 202 S.W.3d 811, 815-16 (Tex. App.–San Antonio 2006, pet. denied).

13

a homeowner's policy); Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170 (Tex. 1995)(involving an automobile policy); Progressive Cty. Mut. Ins. Co. v. Trevino, 202 S.W.3d 811 (Tex. App.–San Antonio 2006, pet. denied)(involving an automobile policy); Filley v. Ohio Cas. Ins. Co., 805 S.W.2d 844 (Tex. App.–Corpus Christi 1991, writ denied)(involving a general liability policy); Emp'rs Liab. Assurance Corp. v. Mosley, 460 S.W.2d 201 (Tex. Civ. App.–Houston [14th Dist.] 1970, no writ)(involving an automobile policy); Universal Auto. Ins. Co. v. Culberson, 54 S.W.2d 1061 (Tex. Civ. App.–Waco 1932, writ granted)(involving an automobile policy), aff'd, 86 S.W.2d 727 (Tex. Comm'n App. 1935). Another cited case, which involved automobile insurance, addressed a policy's settlement-without-consent exclusion. See Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691 (Tex. 1994). A suit against the insured for an advertising injury was the focus of a case cited by Cox. See PAJ, Inc., 243 S.W.3d at 630.

Neither the parties nor the court located a case with the precise policy requirement and situation. Nevertheless, a trend has emerged in opinions applying Texas law to various clauses in different types of policies. After reviewing many cases, the court has identified what it believes to be the best approach to analyzing an alleged breach of a cooperation clause in a CGL policy.

Prior to 1973, Texas cases addressing requirements for coverage[47] tended to find that a breach of a cooperation clause might relieve the insurer of liability under the policy. Mosley, 460 S.W.2d at 203 ("A breach of the cooperation clause of an automobile liability insurance policy may relieve the insurer from liability under the policy."); Culberson, 54 S.W.2d at 1062 ("If . . . [the insured] failed and refused to render any co-operation . . . and thereby prevented [the insurer] from making an orderly and legal defense to suit . . ., same constituted such a breach of contract as would prevent a recovery thereon."); but see Griffin, 273 F.2d at 48 ("[I]t is the law that it is essential to proof of breach of the cooperation clause, that actual, not merely suppositious or theoretical[,] prejudice to the insurer therefore be shown . . . .").

A more recent trend[48] requires, in addition to evidence of breach of a policy requirement, proof that the insurer was

---

[47] The court reviewed, but ultimately disregarded, cited cases addressing policy conditions to the right of an insured to bring suit against the insurer. A requirement for coverage, not suit, is at issue here.

[48] This trend seems to have been started by the Texas Insurance Board ("TIB"), which instituted a requirement in 1973 for all CGL policies that "the insurer must be prejudiced by the insured's failure to forward suit papers before such failure will bar the insurer's liability under the policy." Bituminous Cas. Corp. v. Vacuum Tanks, Inc., 75 F.3d 1048, 1056 n.6 (5th Cir. 1996)(applying Texas law). The Texas Supreme Court explained that the TIB acted in response to a 1972 Texas Supreme Court opinion in which the court found that the insured's failure timely to forward suit papers precluded the insurer's liability regardless of any prejudice to the insurer. PAJ, Inc., 243 S.W.3d at 632, 636-37 (citing Members Mut. Ins. Co. v. Cutaia, 476 S.W.2d 278 (Tex. 1972)).

15

prejudiced by the breach.[49]  Hanson Prod. Co. v. Americas Ins. Co., 108 F.3d 627, 631 (5th Cir. 1997)(acknowledging the modern trend and opining that the Texas Supreme Court would follow it); see also PAJ, Inc., 243 S.W.3d at 634 (discussing prejudice requirement at length, collecting cases, and applying the rule to notice-of-suit clause for an advertising injury under a CGL policy).  Since the Hanson Production Company decision in 1997, multiple courts applying Texas law have followed the modern trend.  See, e.g., Ridglea Estate Condo. Ass'n v. Lexington Ins. Co., 415 F.3d 474, 480 (5th Cir. 2005)("[W]e hold that the district court erred in holding that [the insurer] was not required to show prejudice in order to raise breach of the policy's prompt notice provision as a defense."); State Farm v. Brown, 2009 WL 2902511, at *3 ("An insurer must show prejudice from the failure to cooperate to be relieved of any contractual obligations."); PAJ, Inc., 243 S.W.3d at 636-37 ("We hold that an insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay."); Hernandez, 875 S.W.2d at 693 ("We conclude, therefore, that an insurer who is not prejudiced by an insured's settlement may not deny coverage under an uninsured/underinsured motorist policy that contains a settlement-

---

[49] According to the case law, if a breach prejudices the insurer, it deprives the insurer of an expected contractual benefit and, thus, is a material breach that excuses the insurer of all obligations under the contract. Hernandez, 875 S.W.2d at 692-93; see also Hanson Prod. Co. v. Americas Ins. Co., 108 F.3d 627, 630 (5th Cir. 1997)(applying Texas law).

16

without-consent clause."); Trevino, 202 S.W.3d at 816 ("[The insurer] will not escape liability unless it was prejudiced by the lack of cooperation.").

One common thread among all of the cases is that the questions whether the insured materially breached the policy and whether the breach prejudiced the insurer are fact issues that may be resolved as a matter of law when no factual dispute exists or only one conclusion could be drawn from the evidence by a reasonable jury. See State Farm v. Brown, 2009 WL 2902511, at *3 (specifically finding no genuine issue of material fact whether the insured cooperated under the policy); Filley, 805 S.W.2d at 847 (specifically finding the evidence sufficient to support a finding that lack of notice and cooperation prejudiced the insurer); Mosley, 460 S.W.2d at 203 (finding a question of fact regarding whether the insured "so materially breached his duty to cooperate as to relieve [the insurer] of liability"); Frazier v. Glens Falls Indem. Co., 278 S.W.2d 388, 391 (Tex. Civ. App.–Fort Worth 1955, writ refused n.r.e.)(stating that what constitutes a breach of the cooperation clause is usually a question of fact); Culberson, 54 S.W.2d at 1062 (stating that whether the insured cooperated was an issue of fact).

From the cases reviewed, the court derives the following guidelines: 1) breach of an insurance policy's cooperation clause may justify denial of coverage if it results in prejudice to the

insurer; and 2) summary judgment is proper if the breach may be established as a matter of law. The latter question provides the starting (and ending) point for purposes of the presently pending motion. Thus, the court reviews the evidence to determine whether St. Paul has produced sufficient evidence that Cox failed to cooperate with St. Paul in the investigation of the loss as to warrant summary judgment.

St. Paul accuses Cox of intentionally withholding "adequate and timely claim supports," focusing primarily on the daily reports of Cox's activities and the activities of Cox's vendors.[50] Cox does not challenge St. Paul's evidence of the communication history between the parties but, rather, disagrees with the inferences St. Paul draws from the account.

The evidence on record demonstrates that Cox submitted information to St. Paul at various times over the course of several years following Hurricane Katrina. According to the summary judgment evidence, the first paperwork that Cox sent St. Paul was a letter dated July 2006, which included spreadsheets documenting expenses related to pollution cleanup. The letter offered supporting invoices on request and specifically stated that it was a partial claim because expenses for cleanup were ongoing at the time.

---

[50]   Doc. 295, St. Paul's Cooperation Clause Mot., p. 2.

Shuman representatives repeatedly sought additional documentation and information from Cox over the course of the next year.  Representatives of the parties met in August 2006 and May 2007.  Notes from early August 2007 indicate that Shuman received additional claim documentation but sought more documentation for labor allocation.  A couple of weeks later, the notes indicate, Shuman received time sheets for the period 2005-2007.  St. Paul filed this action on August 23, 2007, and Cox filed later the same month in Louisiana.  In June 2008, Shuman received a revised claim and, ultimately, received the daily reports and field notes.

Although Cox did not provide the documentation sought by Shuman when it was requested, Cox and its retained representatives submitted partial documentation, remained in contact with St. Paul's representatives, met with St. Paul's adjusters, and, eventually, provided all of the requested information.  The court cannot determine from the evidence, without drawing inferences, why Cox did not provide the itemized invoices, documentation of labor allocation, daily reports, and field notes in a more timely fashion.  If the court is to draw inferences, it must do so in favor of Cox.  Doing so results in a finding that, despite the delays, Cox did cooperate with St. Paul, at least to a degree, by slowly providing access to the information sought.

Under the circumstances presented to the court, it simply cannot say as a matter of law that Cox failed to cooperate to the

degree that it materially breached the insurance policies. A reasonable jury could draw more than one conclusion from the evidence. That alone is reason enough to deny summary judgment on breach of the cooperation clause.

### V. Conclusion

Based on the foregoing, the court **RECOMMENDS** that St. Paul's Motion for Partial Summary Judgment on Cox's Breach of Cooperation Clause be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 21st day of October, 2011.

Nancy K. Johnson
United States Magistrate Judge