UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Cox Operating, L.L.C., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action H-07-2724 |
| § | |
| St. Paul Surplus Lines § | |
| Insurance Company, § | |
| § | |
| Defendant. § | |

## Order

Pending before the court are the objections of the parties to the magistrate judge's memoranda and recommendations on Cox's motion for summary judgment (Dkt. 332); St. Paul's motions for partial summary judgment on repair of flowlines and wreck removal (Dkt. 331); and St. Paul's motion for partial summary judgment based on the cooperation clause (Dkt. 333). Upon consideration of the objections of the parties, the responses to objections, the oral argument of the parties, and the applicable law, the objections are SUSTAINED IN PART and OVERRULED IN PART as detailed below. The court ADOPTS IN PART the magistrate judge's memoranda and recommendations as a whole with the exception of and to the extent they conflict with the court's holdings below.

### I. Policy Exclusions

In its motion for partial summary judgment, Cox requested that the court find certain allegedly undisputed factual issues to be established as a matter of law. Dkt. 294. Cox also sought judgment on coverage, exclusions, and compliance with conditions precedent. In the corresponding memorandum and recommendation, the magistrate judge found that Cox had not satisfied its summary judgment burden as to any matter. With regard to the allegedly undisputed factual issues,

the magistrate found that they should be the subject of pretrial stipulations, not summary judgment. On the issue of entitlement to payment, the magistrate judge recommended denial of summary judgment because Cox failed to provide any law or analysis and, rather, simply pointed to Morrison's declaration as dispositive.

The court adopts the memorandum and recommendation in all respects except the denial of summary judgment on three exclusions in the excess policy. In its brief, Cox quoted the relevant policy exclusions and dismissed each summarily:

1. The "Control of Property" exclusion has no application on its face;

2. The "Pollution clean-up costs for underground pollutants" exclusion is not remotely factually applicable, as none of the Resulting Pollution was underground; and

3. Under its express wording, the "Pollution work loss, cost, or expense" exclusion is not applicable to the material "Pollution clean-up cost liability" insuring agreement of the Excess Policy[.][1]

Now, with the benefit of the analysis offered at the hearing on objections to the magistrate judge's memoranda, the court finds that none of the three exclusions applies for following reasons.

**A. Control of Property Exclusion**

The excess policy contained an exclusion for property under the control of the insured:

**Control of property.** We won't cover property damage to any of the following property:

- Property that's owned by you, any of your partners or co-venturers if you're a partnership or joint venture, or any of your members or managers if you're a limited liability company.

- Property that's owned by your subsidiary or parent organization or by any organization more than 50% owned by you or your subsidiary or parent organization.

---

[1] Dkt. 297, Brief in Support of Cox's Mot. for Partial Summ. J., p. 36. In its reply, Cox repeats these three statements, again without analysis. *See* Dkt. 328, Cox's Reply to St. Paul's Resp. to Cox's Mot. for Partial Summ. J., pp. 35-36.

- Aircraft or watercraft that's owned, rented, leased, borrowed, or used by, or in the care, custody, or control of, any protected person.

Nor will we cover property damage to any of the following property, but only to the extent any protected person is required by contract to insure against damage to that property:

- Property that isn't described in the first paragraph of this exclusion and is rented, leased, or borrowed from others, occupied, or used by any protected person.

- Property that isn't described in the first paragraph of this exclusion and is in the care, custody, or control of any protected person.[2]

As part of its motion, Cox submitted an affidavit attesting that Cox was only the operator of the oil field and that neither it nor any of its related entities owned any of the equipment, platforms, vessels, or any other property. Cox also represented that none of the damaged property was an aircraft or watercraft. St. Paul proffered no controverting evidence. At the hearing, Cox again represented that it did not own the subject properties, and St. Paul did not contest Cox's representations. As the first portion of this exclusion requires ownership of the property or concerns aircraft or watercraft, it is inapplicable. The second portion applies only if the insured is contractually required to insure the property. St. Paul has not alleged the existence of, much less provided any supporting evidence of, a third-party contract with Cox requiring Cox to insure the property in issue.[3]

The court holds that this exclusion is not applicable to Cox's pollution claim.

---

[2] Dkt. 292-9, Ex. 9 to Brief in Support of Cox's Mot. for Partial Summ. J., Oil & Gas Umbrella Excess Liab. Prot., p. 20.

[3] The court previously held that the control of property exclusion unambiguously excluded coverage for property damage to Cox's property without reference to ownership. *See* Dkt. 200, Order Adopting Magis. J.'s Mem. & Recommendation. The facts, as developed at this point, indicate that the damaged property did not fit within this exclusion.

3

### B. Pollution Work Loss, Cost, or Expense Exclusion

The excess policy did not cover:

**Pollution work loss, cost, or expense.** We won't cover any loss, cost, or expense that results from:

- any request, demand, order, or statutory or regulatory requirement that any protected person or others perform pollution work; or

- any claim or suit by or for any governmental authority for damages that result from the performance of pollution work.

But we won't apply this exclusion to pollution clean-up costs covered under the Pollution clean-up costs liability section of this agreement.

Nor will we apply this exclusion to any damages for property damage for which the protected person would have liability without such:

- request, demand, order, or statutory or regulatory requirement; or

- claim or suit.[4]

By its own terms, this exclusion does not apply to clean-up costs which are covered under the liability coverage portion of the policy. At the hearing, St. Paul conceded that, if a cost is covered under the coverage portion of the policy, it is not subject to this exclusion. The court agrees with this interpretation and holds that the exclusion is not applicable to otherwise covered costs.

### C. Underground Pollutants Exclusion

St. Paul conceded at the hearing that the underground pollutants exclusion did not apply. Therefore, Cox should be granted summary judgment as to this exclusion as well.

## II. FLOWLINE REPAIR AND WRECK REMOVAL

In two of its motions, St. Paul sought findings as a matter of law that the repair of flowlines and the removal of wreckage and debris were not covered by the insurance policies and that the

---

[4] Dkt. 292-9, Ex. 9 to Brief in Support of Cox's Mot. for Partial Summ. J., Oil & Gas Umbrella Excess Liab. Prot., p. 27.

4

former category was specifically excluded from coverage. Dkts. 292, 293. The magistrate judge determined that the following categories of costs were at issue:

> 1) locating and capping flowlines that were releasing hydrocarbons; 2) locating and retrieving flowlines that remained attached to vessels containing hydrocarbons, cutting them free from the vessels, and capping them to prevent the release of hydrocarbons; 3) locating and hauling up vessels and equipment that contained hydrocarbons to end the escape of hydrocarbons, and 4) removing structural components that blocked access to flowlines and hydrocarbon-containing vessels and equipment.[5]

Expressing concern that ruling on repair of flowlines and wreck removal coverage was too abstract, the magistrate judge focused on interpreting the insurance policies. The magistrate judge found that the policies covered "solely actions taken related to a pollutant, either taken in response to the presence of a pollutant or taken in response to the effects of a pollutant" but did not cover "preventing the release of a pollutant."[6] She noted that Cox did not claim losses based on the effects of any pollutant.

The requirement in the policies that the pollutants must have been discharged by a sudden and accidental pollution incident buttressed the magistrate judge's determination. The memorandum and recommendation interpreted the policies as covering only the pollution clean-up costs that resulted from the pollution incident itself as opposed to costs necessitated by subsequent pollution discharges as a result of the clean-up efforts. Concluding that each expense needed to be evaluated in light of the surrounding facts to determine if it was pollution work, the magistrate judge found that the categorization of Cox's activities was a fact issue.

The court adopts the magistrate judge's interpretation of the insurance coverage terms but disagrees with the determination that the court cannot state as a matter of law whether certain actions

---

[5] Dkt. 331, Mem. & Recommendation Dated Oct. 21, 2011, p. 12.

[6] Id. at pp. 13-14.

5

are categorically not covered. What was being done each day and for what purpose is a fact question, but the court can draw coverage lines between types of activities. The parties' representations at the hearing and the evidence in the record demonstrate sufficient controversy regarding these determinations that the court is not ruling in the abstract or providing advisory opinions.

The court begins by noting that the sudden and accidental pollution incident at issue was the damage caused by Hurricane Katrina, and that it is undisputed that the pollutants at issue are hydrocarbons. Therefore, only the clean-up efforts related to the hydrocarbons that were discharged, were dispersed, were released, or escaped in the immediate aftermath of Hurricane Katrina are covered under the St. Paul policies. As stated by the magistrate judge, pollution prevention is not covered. Additionally, with the one exception articulated below, actions undertaken for the purposes of repairing flowlines or removing wreckage and debris are not covered. However, actions undertaken for the purpose of testing, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing discharged or escaping pollutants clearly are covered.

Applying these interpretations to the facts of the case, the court charts a course between Cox's all and St. Paul's nothing coverage routes. The simplest category to address are the costs Cox expended to test for and to locate leaking flowlines and to cap them in order to contain the escaping hydrocarbons. As these efforts involved testing and containing escaping pollutants, they are covered. Similarly, to the extent Cox incurred costs associated with identifying leaks from vessels and equipment that had been breached and patching those leaks, those costs are covered. If, and only if, a leaking vessel or leaking piece of equipment could not be patched in place and had to be removed from the water solely for the purpose of stopping the discharge of hydrocarbons, the policies cover the removal.

On the other hand, flowlines, vessels, and other equipment that were not leaking hydrocarbons, even if they were submerged or displaced and contained hydrocarbons, did not require pollution work. All actions taken in relation to those vessels and equipment are not covered. Pollution resulting from cutting the non-leaking flowlines free from intact vessels did not result from the pollution incident because it was not sudden and accidental, but planned and intentional. At best, those actions, as well as the subsequent capping of the intentionally cut flowlines and retrieving the vessels from which they were cut, were acts of prevention for which the policies offered no coverage. *Cf. Kearny Barge Co. v. Global Ins. Co.*, 943 F. Supp. 441, 457-58 (D.N.J. 1996), *aff'd*, 127 F.3d 1095 (3d Cir. 1997)(finding, based on the facts there, that the potential for pollution did not affect the salvage[7] costs and, therefore, the refloating operation was not pollution work).

The final category of expenses identified by the parties as being in dispute were the costs of removing structural components that blocked access to flowlines, vessels, and/or other equipment that were actively leaking hydrocarbons.[8] Removal of such items is covered if they had to be removed only in order to abate the leak. If, on the other hand, the structural components would have been removed anyway and their removal simply made pollution abatement more convenient, the removal is not covered by the policies.

Determining into which category each activity fits will, in some cases, be a question of fact. *See Port of Portland v. Water Quality Ins. Syndicate*, 796 F.2d 1188, 1195 n.3 (9th Cir. 1986)("The facts here are whether certain activities constituted salvage or pollution control. While there are certain historical facts (i.e, the activities taken), there remains only an ultimate factual determination categorizing those activities. There are no rules of law to apply to those facts to determine whether

---

[7] Cox argues that the removal of the wreckage had no salvage purpose. The point is not whether the wreckage had salvage value but whether it would have been removed for any reason other than pollution work.

[8] If the blocked flowlines, vessels, and/or equipment were not leaking, removal of components that blocked access is not covered.

7

the activities were salvage or pollution control. The determination is a purely factual one founded on the application of the fact-finding tribunal's experience with the mainsprings of human conduct.")(internal quotation marks omitted). However, the above policy interpretation should sharply reduce the number of disputed claims.

### III. COOPERATION CLAUSE

St. Paul moved for partial summary judgment, arguing that Cox's alleged pervasive and continuous pattern of intentionally and purposely withholding necessary claim information was a material breach of the contract, relieving St. Paul of liability under the policies. Dkt. 295. Cox counters that the cooperation clause was merely part of a laundry list of conditions precedent in the policy. Any breach would, therefore, be remedied by abatement, not a forfeiture of coverage. And, since all requested documentation in support of the claim is now in St. Paul's possession, Cox has substantially complied. Moreover, Cox argues that once St. Paul denied coverage, on a different basis than the cooperation clause, St. Paul is thereafter estopped from asserting breach of the cooperation clause.

The magistrate judge did a thorough examination of the nature of the cooperation clause to determine if it is a condition precedent or a covenant, holding that the clause was a covenant. She then determined that a breach of the clause could operate to deny coverage if the insurer was prejudiced and, upon review of the summary judgment evidence, determined that there was an issue of material fact regarding Cox's level of cooperation. Thus, the magistrate judge denied St. Paul's motion for summary judgment. Cox objected, based essentially on the same arguments it made to the magistrate judge. The court agrees with the magistrate judge that the motion should be denied, but for a different reason: assuming *arguendo* that Cox breached the cooperation clause, coverage

8

is not forfeited because the breach was not a material breach and Cox is now in substantial compliance.

"Insurance policies are contracts, and as such are subject to rules applicable to contracts generally." *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). "A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Id.* Conversely, when a breach is not material, the insurer "should not be relieved of its obligation to provide coverage." *Motiva Ents., LLC v. St. Paul Fire & Marine Ins. Co.*, 445 F.3d 381, 386 (5th Cir. 2006) (citing *id.* at 693). The Texas Supreme Court has used this materiality inquiry regardless of the characterization of the policy provision at issue. *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 633 (Tex. 2008). Courts consider a number of factors to determine whether a breach was material. *Id.* (citing Restatement (Second) of Contracts § 241(a) (1981)). These factors are

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241(a) (1981).

The first factor—the extent to which the injured party will be deprived of the benefit which he reasonably expected—weighs against the materiality of the breach. The purpose of a cooperation clause, in a first-party context, is to make it possible for an insurer to collect information while it is still fresh to enable the insurer to make a determination regarding coverage and protect itself against false or fraudulent claims. 14 COUCH ON INSURANCE 3D § 199:4. Here St. Paul argues that it lost

the benefit of its bargain because it was forced to readjust the claim when it finally received the requested documents. Cox responds that St. Paul never asked the right person for the documents and that, in any event, Cox has now given them the documents so there is no harm. The court agrees that Cox's current substantial compliance works in its favor. St. Paul does not assert that the information in the documents is less accurate for being less fresh. Nor, is it claiming that having the documents in a more timely fashion would have protected it from fraud. Admittedly, the timing of the production of the documents is troubling. However, the tardy delivery of the documents does not deprive St. Paul of the benefit of its bargain.

The second factor—the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived—does not really come in to play here. St. Paul was not deprived of the benefit of its bargain, so no compensation is needed. The third factor—the extent to which the party failing to perform or to offer to perform will suffer forfeiture—also weighs against materiality. If Cox failed to cooperate in delivering the documentation to back up its claims, then St. Paul could determine based on the lack of supporting documentation that the occurrence fell outside the scope of coverage. Cox, not St. Paul, would suffer the forfeiture.

The fourth factor—the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances—argues strongly against materiality since Cox has already cured its failure. It is the last factor—the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing—that is less clear. There certainly remains a fact question regarding Cox's response, or lack of response, to St. Paul's requests for documentation. However, even assuming for the sake of argument that Cox did not comport with these standards—a finding this court expressly does not make—the factors as a whole would weigh against Cox's breach being a

material breach. Accordingly, the court holds that based on the facts in this case, Cox's breach—if any—was not material and St. Paul is not excused from performance under the contract based on an alleged breach of the cooperation clause.

## Conclusion

Pending before the court are the objections of the parties to the magistrate judge's memoranda and recommendations on Cox's motion for summary judgment (Dkt. 332); St. Paul's motions for partial summary judgment on repair of flowlines and wreck removal (Dkt. 331); and St. Paul's motion for partial summary judgment based on the cooperation clause (Dkt. 333). The court ADOPTS IN PART the magistrate judge's memoranda and recommendations as a whole with the exception of and to the extent they conflict with the court's holdings as detailed above. Cox's motion for summary judgment (Dkt. 294) is GRANTED IN PART with respect to the three exclusions discussed above and is DENIED IN PART as to all other contentions. St. Paul's motions for partial summary judgment on repair of flowlines and wreck removal (Dkts. 292, 293) are GRANTED IN PART insofar as the court has narrowed its interpretation of the policies' coverage explained above, but DENIED IN PART where fact questions still exist. St. Paul's motion for summary judgment based on the cooperation clause (Dkt. 295) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on January 31, 2012.

_____
Gray H. Miller
United States District Judge