# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| COX OPERATING, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-2724 |
| | § | |
| ST. PAUL SURPLUS LINES | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

Pending before the court is defendant St. Paul Surplus Lines Insurance Company's ("St. Paul") motion to exclude or, alternatively, limit the expert testimony of Edwin Stanton.  Dkt. 381. Upon consideration of the motion, the response, and the applicable law, the motion is GRANTED IN PART and DENIED IN PART as detailed below.

## BACKGROUND

This case revolves around the question of whether certain activities undertaken by plaintiff Cox Operating, LLC ("Cox") are covered under the Umbrella Excess Liability Policy ("Umbrella Policy") issued by St. Paul.  For a detailed background, the court incorporates by reference the factual background section of the Magistrate Judge's Memorandum and Recommendation, dated October 21, 2011.  Dkt. 331.

## LEGAL STANDARD

The Supreme Court of the United States acknowledged in *Daubert v. Merrell Dow Pharmaceuticals* that Federal Rule of Evidence 702 serves as the proper standard for determining the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharms*., 509 U.S. 579, 597–98, 113 S. Ct. 2786 (1993).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. Under *Daubert*, a trial court acts as "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93; *Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified, an expert's methodology for developing the basis of his or her opinion must be reliable. *Daubert*, 509 U.S. at 592–93; *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of her opinion reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for her testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *See* FED. R. EVID. 104(a); *Moore*, 151 F.3d at 276. The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

The Supreme Court in *Daubert* directs judges "assessing a proffer of expert scientific testimony under Rule 702 [to] also be mindful of other applicable rules." *Daubert*, 509 U.S. at 595. Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.  However, Rule 403 allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.  And the Fifth Circuit has consistently held that an expert may not render conclusions of law.  *Snap–Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir.1996); *see also Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir.2009) ("[A]n expert may never render conclusions of law."); *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983) ( "[A]llowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.").

### ANALYSIS

Defendants move for the exclusion of all or part of the expert testimony of Edwin Stanton. Dkt. 381.

### A.    Qualifications

There is no doubt that Edwin Stanton is well-qualified to direct the clean-up of an oil-spill on the water.  He enlisted in the Coast Guard in 1975 and served continuously until 2011, when retired with the rank of Captain.  Dkt. 386-1.  An enormous portion of his Coast Guard career was spent in various roles involving the containment and clean-up of oil, and other materials, spilled into the water.  *See id.*, ¶¶ 4–18.  Stanton received training and on the job experience with positions of increasing authority and responsibility.  *Id.*  He has held numerous positions of authority in the realm

of oil-spill and hazardous material clean-up for the Coast Guard, and the federal government, including but not limited to, Chief of the Response Division, FEMA Federal Coordinating Officer, Officer if Charge–Marine Inspection, Federal Maritime Security Coordinator, Incident Commander, and Operations Section Chief.  *Id.*  Notably, as Federal Coordinating Officer he was given authority to report spills, determine their severity, and enforce the method of clean-up against the responsible parties.  *Id.*  Based on his many years of experience, Stanton has a thorough working knowledge of the properties of hydrocarbons in water and their effect on organisms and objects in the water.  *Id.* He also has a layman's understanding of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.*; the Oil Pollution Control Act of 1990, 33 U.S.C. § 2701  *et seq.*; and the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R., Pt. 300.  *Id.*  Accordingly, the court finds that Stanton is qualified to opine in the areas for which Cox has designated him.

## B.    Reliability & Relevance

The *Daubert* factors are not particularly helpful in measuring the reliability of a non-scientific expert testifying based on approximately 35 years of practical experience.  Instead, here the court must determine whether Stanton "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho*, 526 U.S. at 152. In preparing his expert report, Stanton examined, among other things, Cox's facilities, interviewed employees regarding the actions taken to clean-up after Hurricane Katrina, and reviewed materials regarding the equipment that was damaged by the storm.  He then applied his years of experience to determine what had happened and what he, in their place, would have done.  He formed these opinions based on some basic tenets of hydrocarbon clean-up he has developed over his years in the Coast Guard. Additionally, he applied his knowledge of the statutes enumerated above to opine on what Cox was

4

required to do by law.   The court finds that his methods are reliable for this type of expert given this type of situation.

Additionally, the court asks whether Stanton's testimony is reliable and "will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702.  The court finds that a portion of Stanton's opinions are not relevant because they do not assist the trier of fact. His opinions fall into two main categories: opinions on the law, and opinions on the behavior of hydrocarbons in water and the practicalities of oil spill clean-up.  In the first group—his opinions regarding the law, he opines on what would have been required by law, what types of recovery would have been required or prevented by law, how the law would categorize the damage caused by the storm.  He also gives an opinion on whether Cox's method of clean-up was what he, as a Federal Coordinating Officer, would have ordered. The opinions in this first group  are not relevant.  Under the Umbrella Policy only those amounts Cox was legally required to pay could qualify for coverage. Dkt. 292-9, at Cox02419.  So, a threshold question is what actions taken by Cox were required by the federal officer in charge.  If Stanton had been the Coast Guard person who ordered Cox to take certain actions, then he could testify to that fact.  But he was not.  Cox has designated several Coast Guard officers who are designated to testify "regarding Cox's pollution clean-up efforts, the state and federal regulations with which Cox was legally required to comply, and the authority of the Unified Command to mandate compliance with the applicable regulations." Dkt. 393-3.  What Stanton would theoretically have required Cox to do is not relevant because it does not make the fact of whether the clean-ups actually *were* legally required any more or less true.[1]  And, his opinions on

---

[1]The court also notes that even if Stanton's opinions on the law were relevant, the court would still exclude them under Rule 403.  While the question of whether Cox was legally required to pay for clean-up is a part of the factors to determine whether a particular cost is covered by the Umbrella Policy (Dkts. 292-8, 292-9), as the court outlined in its order adopting in part the Magistrate Judge's Memorandum & Recommendations the inquiry does not stop there. Dkt. 355.

the law are improper because they invade the purview of the court.   *Goodman*, 571 F.3d at 399

("[A]n expert may never render conclusions of law.").   Therefore, any opinions he has regarding the

statutes, the rules, and their requirements is excluded.

In the second group—opinions on the behavior of hydrocarbons in water and the practicalities

of oil spill clean-up, Stanton opines that hydrocarbons in contact with water will migrate, that

hydrocarbons tend to cause build-up on structures ("clingage"), and that patching holes in flowlines

and vessels in place would have been impossible based on practical considerations—any opinions

regarding the legality of patching underwater is already excluded.   These opinions are relevant, at

least regarding their effect on Cox's ability to repair flowlines and vessels in place.   St. Paul's

arguments regarding the facts upon which the opinions are based and Stanton's understanding of the

scientific concepts are the subjects for cross-examination.   Therefore, the court will not exclude the

opinions in the second group.

## CONCLUSION

Pending before the court is St. Paul's motion to exclude.   Dkt. 381.   The motion is

GRANTED IN PART in that any testimony from Stanton regarding the law is EXCLUDED.   The

motion is DENIED IN PART in all other respects.

It is so ORDERED.

Signed at Houston, Texas on April 23, 2013.

_____
Gray H. Miller
United States District Judge

---

Allowing an expert to testify that everything Cox did would be legally required runs the risk of
overshadowing for the jury the importance of the other factors on the coverage determination.
Legally required clean-up costs and covered clean-up costs are not coterminous.