UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Cox Operating, L.L.C., | § |
| | § |
|     *Plaintiff*, | § |
| | § |
| v. | §    Civil Action H-07-2724 |
| | § |
| St. Paul Surplus Lines Insurance Company, | § |
| | § |
|     *Defendant*. | § |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are Cox Operating, LLC's ("Cox") opposed motion for entry of judgment (Dkt. 498) and St. Paul Surplus Lines Insurance Company's ("St. Paul") motion to toll statutory interest (Dkt. 496). After considering the motions, responses, replies and applicable law, the court is of the opinion that the motion for entry of judgment should be GRANTED and the motion to toll statutory interest should be DENIED. The court has separately entered a Final Judgment contemporaneously herewith, consistent with the findings in this opinion.

**I.  Background**

This case stems from St. Paul's denial of pollution clean-up coverage under insurance policies issued to Cox in June 2005. The policies provided primary and umbrella excess insurance coverage for certain oil wells and related facilities operated by Cox in Louisiana. Following Hurricane Katrina, the oil fields and related equipment were largely destroyed. Oil was released at the well sites as a result of the hurricane, causing Cox to incur expenses to locate the source of the pollution and clean-up the resulting oil contamination.

Cox reported the damage to St. Paul and provided supporting documentation for its claim under the policies. Although, Cox submitted over $15 million in claimed covered expenses, St. Paul issued Cox partial payments on the claim approximating $1.437 million. In May 2007, St. Paul issued a reservation of rights letter stating that it disputed coverage for many of the expenses submitted by Cox. Specifically, St. Paul determined many of the costs were uncovered because they were costs unrelated to clean up or remediation of the pollution, fines and penalties, or expenses related to first-party property damage.

This case proceeded to trial on May 14, 2013. On June 19, 2013, following 23 days of trial, a duly-impaneled jury rendered a verdict in favor of Cox. Based on its responses in the special verdict form, the jury found the following:

> 1) St. Paul failed to comply with the excess insurance policy;
>
> 2) St. Paul was required to pay Cox $9,465,103.22 under the excess policy, over and above amounts already paid, for pollution clean-up costs;
>
> 3) St. Paul engaged in unfair or deceptive acts or practices that were the producing cause of Cox's damages, including failing to attempt in good faith to effectuate a fair, prompt and equitable settlement of the claim and refusing to pay the claim without conducting a reasonable investigation;
>
> 4) St. Paul failed to commence an investigation of Cox's claim and request all items, statements, and forms that St. Paul would need to investigate the claim within 30 days of receiving notice of the claim; and
>
> 5) St. Paul received all items, statements, and forms required to secure final proof of loss on July 31, 2006.

Dkt. 489. The jury did not find that St. Paul acted knowingly, thereby precluding an award for punitive damages. *Id.* Further, the jury did not find that Cox had in any way breached the terms of the policy or defrauded St. Paul. *Id.*

Cox now requests that the court enter judgment on the jury verdict. Dkt. 498. Specifically, Cox seeks entry of judgment adopting the jury's findings and awarding damages, statutory penalty interest under the Texas Insurance Code, and prejudgment and postjudgment interest. St. Paul seeks offsets to the total damage award based on amounts allegedly paid to Cox by other insurers and amounts not submitted to St. Paul within one year of the conclusion of the pollution cleanup. It further disputes the date upon which the statutory interest begins to run and asks this court to deny prejudgment interest altogether.

## II.  ANALYSIS

### A.  Offsets

St. Paul argues that the jury's award should be reduced by the amounts St. Paul claims other insurers paid to Cox for the same pollution cleanup costs. Further, St. Paul reurges its position that Cox should not be entitled to recover the claimed expenses submitted to St. Paul one year after the pollution cleanup concluded under the terms of the policy. The court is not inclined to disturb the jury's verdict at this stage. The jury was allowed to hear evidence relating to the other insurance policies and payments made thereunder. After hearing such evidence, the jury concluded that St. Paul was required to pay Cox "under the Excess Policy, over and above the amounts already paid, for pollution clean-up costs." Dkt. 489, Question 2. Moreover, the court has considered and rejected St. Paul's argument regarding the one year reporting provision in the policy. Dkt. 216. The court has made its position clear that it construes the one year reporting provision to be a condition precedent waived by St. Paul when it denied coverage. *Id.* The court declines to reduce the damage award rendered by the jury, but St. Paul may reurge its arguments for reductions of the jury's verdict in its post-judgment motions.

**B.     Texas Prompt Payment of Claims Act**

The Texas Insurance Code's Prompt Payment of Claims Act (the "Act") imposes requirements on an insurer with respect to responding to claims, accepting or rejecting claims, and promptly paying accepted claims. TEX. INS. CODE § 542.051, *et seq.*; *Guideone Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 830 (Tex. App.–Forth Worth 2008, no pet.). The Act also imposes penalties on insurers for failing to comply with any of its provisions. *Id.* To successfully maintain a claim under the Act, an insured must establish: 1) a claim under an insurance policy; 2) that the insurer is liable for the claim; and 3) that the insurer has failed to follow one or more sections of the Act with respect to the claim. *Id.* at 830-31. A wrongful rejection of a claim may be considered an unauthorized delay in payment for purposes of the Act. *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 461 (5th Cir. 1997).

The jury unequivocally found that Cox made a claim under the excess policy, that St. Paul was liable for the claim in the amount of $9,465,103.22 "over and above those amount already paid" for pollution clean-up costs, and that St. Paul failed to comply with the Act when it did not commence an investigation or request from Cox all items, statements, and forms it needed to reasonably investigate the claim within 30 days of notice of the claim. Consequently, under the terms of the Act, when an insurer fails to comply with any of its provisions, the insurer is "liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees." TEX. INS. CODE § 542.060.

The parties dispute the date upon which the 18% penalty interest should begin accruing. Cox maintains that the interest should begin to accrue either on the date of the first statutory violation (i.e.

4

30 days after notice of the claim or November 17, 2005) or on the date of St. Paul's denial of the claim (i.e. August 30, 2007). St. Paul, however, urges this court to calculate the penalty interest on a rolling basis based on the timing of Cox's submissions to St. Paul of claimed expenses and the statutory deadline for St. Paul to pay for those claimed expenses (i.e. 60 days after submission). Additionally, St. Paul maintains that interest cannot accrue on submissions made by Cox less than 60 days before commencement of litigation.

As the sharply divergent positions of the parties indicate, the jurisprudence on this issue is not a model of clarity. The courts that have considered and analyzed the appropriate accrual date of the penalty interest under the Act have reached various conclusions. Some courts assessed the interest from the date of the first statutory violation. *See e.g., Guideone*, 268 S.W.3d at 834 n.7; *Weiser-Brown v. St. Paul Surplus Lines Ins. Co.*, 2013 WL 2949971, *4 (S.D. Tex. 2013); *Phila. Indem. Ins. Co. v. C.R.E.S. Mgmt., L.L.C.*, 2011 WL 1100218, * 4 (S.D. Tex. 2011). Other courts have used the date of denial. *See e.g., Cater v. United Srvcs. Auto. Ass'n.*, 27 S.W.3d 81, 85 (Tex. App.–San Antonio 2000, pet. denied) (parties agreed on date); *Benitez v. Liberty Mut. Fire Ins. Co.*, 2012 WL 6161034, *4-5 (S.D. Tex. 2012). And finally, still other courts hold that the penalty interest accrues 60 days following the submission of all information requested by the insurer to determine the final proof of loss. *See e.g., Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427-28 (Tex. 2004); *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 264 (Tex. App.–Austin 2002, pet. granted, judgm't vacated w.r.m.); *Oram v. State Farm Lloyds*, 977 S.W.2d 163, 169 (Tex. App.–Austin 1998, no pet.); *Teate v. Mut. Life Ins. Co. of N.Y.*, 965 F. Supp. 891, 894 (E.D. Tex. 1997). The court finds the former approach is consistent with the purpose of the Act and the findings of the jury in this case.

The Act "shall be liberally construed to promote the prompt payment of insurance claims." TEX. INS. CODE § 542.054. In order to ensure that insurers promptly respond to and pay covered claims, the Act establishes certain deadlines and penalties for noncompliance. "If an insurer fails to pay a claim, it runs the risk of incurring this 18 percent statutory fee and reasonable attorneys' fees." *Higginbotham*, 103 F.3d at 461. The overall intent of the Act then is to secure payment of valid insurance claims, while the statutory provisions set out a framework for ensuring that this intent is accomplished in a timely manner.

Here, the accrual of the statutory interest 75 days[1] after the date that St. Paul received all items, statements, and forms required to secure final proof of loss best serves the aims of the Act and the jury's verdict. *See* TEX. INS. CODE § 542.058(a) (if the insurer "after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim . . . for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060"). This approach has also been utilized by the Texas Supreme Court and other courts considering the accrual of the Act's penalty interest. *See e.g., Mex-Tex*, 150 S.W.3d at 427-28; *Allison*, 98 S.W.3d at 264; *Teate*, 965 F. Supp. at 894. The jury found that St. Paul had all information required to secure final proof of loss on July 31, 2006. Dkt. 489, Question No. 8. Thus, the 18 percent statutory penalty will begin to accrue on October 15, 2006 until the date of this judgment. This date represents the statutory deadline required for St. Paul to pay the claim after it was in a position to do so.

---

[1] In the event of a weather-related catastrophe or major natural disaster, the claim-handling deadlines imposed under this subchapter are extended for an additional 15 days. TEX. INS. CODE § 542.059(b).

The court declines the approaches suggested by the parties. First, Cox relies on *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 2003 WL 21662829 (N.D. Tex. 2003), for the proposition that interest should begin to accrue on the date of the first statutory violation. The Fifth Circuit subsequently overruled this case on other grounds, leaving the district court's ruling regarding the Act intact. *Primrose Operative Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546 (5th Cir. 2004). However, the holding and rationale in the district court's opinion in *Primrose* is neither consistent with subsequent cases involving the Act nor the purpose of the statute. *See e.g., Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1 (Tex. 2007); *Mex-Tex,* 150 S.W.3d at 427-28.

Here, it is undisputed that Cox continued to provide supporting material for its claim to St. Paul, and based on the jury's finding and the statutory requirements under Section 542.058, St. Paul was in a position to make a coverage decision and pay the claim as of October 15, 2006, 75 days after it received all documents required to secure final proof of loss. If the court were to adopt the holding in *Primrose* and assess the interest beginning on St. Paul's first statutory violation–30 days after St. Paul received notice of the claim pursuant to Section 542.055 of the Act–the court would have to ignore the evidence and the jury's finding that St. Paul received information and documents substantiating the claim by Cox at a later date. The court is unwilling to penalize St. Paul by imposing statutory interest beginning on a date when St. Paul was not provided the information necessary to evaluate the claim and make an informed decision regarding coverage.

The court is also not persuaded by St. Paul's suggested approach of calculating interest based on the ongoing submissions of Cox. St. Paul relies on the Texas Supreme Court's ruling in *Lamar Homes*. The court finds that *Lamar Homes* is inapposite to the circumstances of this case. The court in *Lamar Homes* was asked to determine if the Act applied when an insurer violated its duty to

7

defend an insured. *Lamar Homes*, 242 S.W.3d at 4. The court held that an insured's request for defense coverage was a first-party claim, making the Act's penalties applicable if the insurer wrongfully denied defense coverage. *Id.* at 19-20.

While the *Lamar Homes* court generally discussed the valuation of the amount of the claim in a duty to defend situation under the Act, this does not dictate that this court is required to assess statutory penalty interest on a rolling basis as claim documents are submitted to the insurer in a pure first-party coverage case. *See Trammell Crow Residential Co. v. Va. Sur. Co.,* Inc., 643 F. Supp. 2d 844, 857 (N.D. Tex. 2008) (distinguishing liability under the Act from submission of documents to support valuation of the claim). In resolving the conflict between the courts of appeals, the Texas Supreme Court recognized that some courts have found the Act "unworkable" in the context of the insured's claim for defense because this type of claim "typically has no finite value at the time the insurer denies it." *Lamar Homes*, 242 S.W.3d at 19. This recognition by the Texas Supreme Court embodies the key distinction between *Lamar Homes* and the instant case, that is Cox's claim for pollution cleanup coverage had a finite value at the time St. Paul denied its claim. Therefore, the *Lamar Homes* ruling does not apply to this case, and St. Paul has not directed the court to any cases in which a court has applied this standard to a case involving the wrongful rejection of a covered first-party claim as opposed to a claim for defense costs.

St. Paul's additional argument that Cox is not entitled to recover any expenses submitted to St. Paul within 60 days of the commencement of litigation is also unavailing. St. Paul's reliance on *Delagarza v. State Farm Mut. Auto. Ins. Co.*, 175 S.W.3d 29 (Tex. App.–Dallas 2005, pet. denied), is misplaced. *Delagarza* does hold that the statutory deadlines under the Act do not apply once the litigation process commences. *Id.* at 33. The insurer in *Delagarza*, however, was found not to have

violated the Act, and therefore, its offer of payment during the litigation was not evaluated in terms of the Act's deadlines. *Id.* Unlike in *Delagarza*, the jury here found that St. Paul had previously violated the Act before litigation began. Thus, St. Paul is not entitled to any reduction in penalty interest based on the timing of Cox's submission of costs.

### C. Tolling

St. Paul further moves this court to toll the statutory interest for periods due to Cox's delay in filing this motion for entry of judgment. St. Paul correctly points out that Cox failed to file its motion for entry of judgment for over a month after the jury's verdict and after several requests from the court regarding the status of the motion. However, Federal Rule of Civil Procedure 58(c) contemplates that time for entry of judgment may run up until 150 days from the date the jury verdict is entered in the docket. FED. R. CIV. P. 58(c)(2)(B). The clerk entered the jury verdict on the date it was rendered, June 19, 2013. Thus, judgment can reasonably and timely be entered under the terms of the rules of procedure up to 150 days after the docket entry. Cox's motion and the entry of judgment will be well within this time frame.[2]

### D. Prejudgment Interest

In a diversity action, Texas law governs the determination of prejudgment interest. *Bartholomew v. CNG Producing Co.,* 832 F.2d 326, 330–31 (5th Cir. 1987) (state law governs the award of pre-judgment interest when state law provides for pre-judgment interest as a substantive right). In actions where an enabling statute does not allow prejudgment interest, common law

---

[2] *Allison v. Fire Ins. Exchange*, 98 S.W.3d 227 (Tex. App.–Austin 2002, pet. granted, judgm't vacated w.r.m.), is inapposite to Cox's delay in filing its motion for entry of judgment. The court in *Allison* declined to award penalty interest during the period when the insured delayed acceptance of payment on the claim. St. Paul has not offered to pay the claim in this case.

9

controls the calculation and recovery of prejudgment interest. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 530 (Tex. 1998). In *Johnson & Higgins*, however, the Texas Supreme Court made the rate and date of accrual of prejudgment interest consistent in common law with those causes of action falling within the enabling statute, Texas Finance Code Section 304.104. Thus, prejudgment interest accrues on the amount of the judgment during the period beginning on the earlier of: 1) the 180th day after the date the defendant receives written notice of a claim; or 2) the date the suit is filed, and ending on the day preceding the date judgment is rendered. *Id.* Prejudgment interest is computed as simple interest. *Id.* As of the date of this judgment, the prevailing prejudgment interest rate under Texas law is 5% per annum[3] and accrues through the date preceding the day judgment is rendered. *See* TEX. FIN. CODE § 304.003.

St. Paul urges this court to deny prejudgment interest, but provides no compelling reason to do so. Prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of the judgment." *Johnson & Higgins*, 962 S.W.2d at 528 (quoting *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985)). The jury found that St. Paul wrongfully rejected Cox's claim, making it entitled to the use of that money since the wrongful denial. Pursuant to Cox's request, the court will award Cox prejudgment interest from the date of lawsuit, August 27, 2007.

E. **Postjudgment Interest**

Even in a diversity case, federal law applies to an award of postjudgment interest. *See Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993) ("[A] court with

---

[3] The current rate is published by the Office of Consumer Credit Commissioner at http://www.occc.state.tx.us/pages/int_rates/Index.html. For the period August 1, 2013 to August 31, 2013, the prevailing judgment interest rate is 5%.

diversity jurisdiction awards prejudgment interest according to state law, . . . but calculates postjudgment interest according to the federal rate."). The applicable federal interest rate for the calendar week preceding the date of judgment is 0.12% per annum.[4] *See* 28 U.S.C. § 1961(a). St. Paul does not dispute the award of postjudgment interest; thus, Cox is awarded postjudgment interest pursuant to 28 U.S.C. § 1961(a) at the statutory rate.

**F.  Costs**

Cox is entitled to costs as the prevailing party under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920.  St. Paul does not oppose this relief.  Therefore, the court awards costs to Cox.

### III.  CONCLUSION

For the reasons stated herein, Cox's motion for entry of judgment (Dkt. 498) is GRANTED. The court will enter a separate Final Judgment contemporaneously herewith consistent with this opinion.  Further, St. Paul's motion to toll statutory interest (Dkt. 496) is DENIED.

IT IS SO ORDERED.

Signed at Houston, Texas on August 16, 2013.

_____
Gray H. Miller
United States District Judge

---

[4] This rate is equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the week ending August 9, 2013. *See* 28 U.S.C. § 1961(a) (specifying the source of the prevailing federal judgment interest rate); *Selected Interest Rates*, FED. RESERVE BD. OF GOVERNORS, 1 (last accessed Aug. 15, 2013), http://www.federalreserve.gov/releases/h15/current/h15.pdf.